**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Kevin R. DOCKTER, also known as Kevin R. Docktor, Defendant– Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Floyd Wesley SHULZE, Defendant– Appellant.**

**Nos. 94–2972, 94–2974.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1995.

Decided July 3, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 22, 1995.

Ralph A. Vinje, Bismarck, ND, argued, for Kevin Dockter.

Michael Ray Hoffman, Bismarck, ND, argued, for Floyd Shulze.

Cameron Wayne Hayden, Asst. U.S. Atty., argued, for appellee.

Before BOWMAN, BEAM, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Kevin Dockter and Floyd Shulze were convicted of being felons in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g). On appeal, they contend that the district court[1] erred in denying their motions to suppress evidence discovered in a vehicle they were occupying and in responding *ex parte* to a question from the jury. Shulze also argues that the district court erred in denying his motion to suppress evidence found in his house pursuant to a warrant and in sentencing him to the 15–year mandatory minimum sentence under 18 U.S.C. § 924(e)(1). We affirm.

### I.

On September 16, 1993, agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) and from the Internal Revenue Service (IRS) executed a federal search warrant on Shulze's Bismarck, North Dakota, residence. The agents had received information that Shulze was involved in sales of controlled substances. Pursuant to the search, the agents discovered numerous rounds of .22 caliber ammunition along with a photograph dated October of 1989 depicting Shulze holding a shotgun.

On October 25, 1993, Burleigh County Deputy Sheriff Dewitt Meier was on patrol duty approximately four miles south of the Bismarck, North Dakota, area. He spotted a vehicle about one-half of a mile away that was parked off the traveled portion of the road and had its parking lights on. He approached the vehicle, did a U–turn, pulled in directly behind it, and activated the amber lights on his vehicle's light bar. As he approached the parked vehicle, he noticed the occupants making shifting, jerky movements, and the individual in the driver's seat leaned toward the passenger as if to say something and then leaned forward and down.

When the deputy reached the parked car, he asked the occupants if they needed assistance. The driver, Kevin Dockter, responded that the car had stalled but was now operable; Dockter revved the car's engine to emphasize this point. During this exchange, Deputy Meier detected the odor of burnt marijuana emanating from the vehicle. He

---

1. The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota.

also observed several bundles of single cigarettes attached to wooden kitchen matches by rubberbands in the console area between the driver and passenger, Floyd Shulze. Deputy Meier asked Dockter for his driver's license, requested the occupants to exit the vehicle, and upon inspection found several loaded firearms and a loaded magazine for one of the firearms.

Shulze and Dockter were later indicted and found guilty by a jury of being felons in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). Because both defendants had at least three prior convictions involving violent felonies within the meaning of 18 U.S.C. § 924(e)(2), they were subject to the mandatory minimum sentence of 15 years of imprisonment under § 924(e)(1). Shulze was eventually sentenced to the mandatory minimum of 180 months (15 years) of imprisonment, and Dockter was sentenced at the bottom of his identified Sentencing Guidelines range (Level 33, Criminal History Category V = 210–262 months) to 210 months of imprisonment. Shulze and Dockter appeal.

## II.

### A. *Suppression of Evidence Seized from the Vehicle*

Shulze and Dockter contend that the district court erred in failing to suppress the evidence Deputy Meier seized from the parked vehicle they occupied on October 25, 1993. They argue that Deputy Meier seized them within the meaning of the Fourth Amendment when he pulled his vehicle behind them and activated his amber flashing lights. Because at that juncture Deputy Meier had neither observed any criminal activity nor developed a reasonable and articulable suspicion of illegal activity, they contend that this seizure was unlawful and that the fruits of the subsequent search of the vehicle must be suppressed. The district court held that Deputy Meier did not seize the appellants until he asked Dockter for his driver's license, and at that point Deputy Meier had developed a reasonable and articulable suspicion of criminal wrongdoing to justify his subsequent detention of the occupants and search of the vehicle. "The determination [of] whether a seizure occurred is a question of law that we review de novo." *United States v. Angell,* 11 F.3d 806, 809 (8th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2747, 129 L.Ed.2d 865 (1994).

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio,* 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 2389, 115 L.Ed.2d 389 (1991). "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988). However, circumstances indicative of a seizure " 'would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Angell,* 11 F.3d at 809 (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Justice Stewart)).

The facts of this case are not unlike those in *Angell,* where a law enforcement officer was investigating an unattended van parked in the middle of a rural public road when he encountered the defendants as they stopped at a nearby stop sign. 11 F.3d at 807. We concluded that the officer's admonition to the defendants to "[s]tay there, I want to talk to you" was not a seizure because "neither [the officer]'s language nor his conduct constituted anything other than what a reasonable person would have construed as a consensual encounter between a law enforcement officer and a member of the public." *Id.* at 809. In reaching this conclusion, we found relevant

that the "events occurred on a public road in the presence of only one officer," the officer "did not block the pathway of the [defendant]'s car, did not draw a weapon, and did not physically touch the" defendants. *Id.*

■ Likewise, we conclude in this case that Shulze and Dockter were not seized within the meaning of the Fourth Amendment when Deputy Meier pulled his vehicle behind their parked car and activated his amber warning lights. At the time of the encounter, the two cars were the only vehicles in the area, Deputy Meier was the only law enforcement officer on the scene, he did not block the appellants' vehicle or in any manner preclude them from leaving, he did not draw his weapon, and his tone of voice was inquisitive rather than coercive. We agree with the district court's assessment that "[t]here was no behavior by the officer that would differentiate this ·encounter from one where an officer approaches a stranded motorist to offer assistance." (Shulze's Addend. at 11.) In fact, Dockter's statement that the car had stalled demonstrates that the officer's conduct in approaching the vehicle was a not unexpected routine roadside assistance call. The fact that Deputy Meier activated his amber warning lights only strengthens and does not detract from this conclusion. We conclude that the district court correctly denied the motion to suppress the evidence obtained from the October 25, 1993, encounter.

## B. District Court's Ex Parte Instruction to Jury Regarding "Knowingly"

After the jury had deliberated at some length, they sent a note to the district judge stating that "[w]e are having a problem with knowingly. Is there anything written in the law to help explain this legal definition of knowingly?" (*Id.* at 13.) Without consulting the attorneys and without the defendants being present, the district judge answered:

'[K]nowingly' is not a difficult concept. If you are aware that you have a gun—then you have it 'knowingly[.]' If you didn't know that it was a gun—if you thought it was a water pistol—a squirt gun—then you did not 'knowingly' possess a gun.

You do not have to 'know' that possessing the gun was a crime.

(*Id.*) The district court stated that it "responded to [the question] without calling the attorneys and making a record because the questions were simple and did not go beyond the discretion of the court." (*Id.*)

Shulze and Dockter contend that the district court committed reversible error by giving this instruction *ex parte* and denying counsel the opportunity to object to the language, in violation of Federal Rule of Criminal Procedure 30. They further contend that they were prejudiced by the instruction because it is not a correct statement of the law, specifically that it used facts from the case as an example and that it detracted from the requirement of dominion and control in order to find "knowing possession." The government contends that this instruction was a correct statement of the law and in fact was beneficial to the appellants because it narrowed "knowingly" in a fashion consistent with their theory of the case, which is that they borrowed the car and did not know the weapons were in it.

■ "It is settled law in this circuit that communications between judges and jury in the absence of the defendant and his counsel are improper, and presumptively prejudicial." *United States v. York,* 830 F.2d 885, 894–95 (8th Cir.1987), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988). This presumption, however, may be overcome by a clear indication of a lack of prejudice. *Id.* at 895. By the same token, "[a] defendant's absence means little when, as in the present case, the trial court's communication merely ... involves a question of law rather than fact." *Stewart v. Nix,* 972 F.2d 967, 971 (8th Cir.1992). "In such a case, a defendant's presence can be of no help to the defense." *Id.*

■ While we in no manner condone the district court's communication with the jury without the appellants and their counsel being present and strongly urge the court to refrain from such a practice in the future, we are satisfied that the presumption of prejudice in this case has been overcome because the court's definition of "knowingly" is at its

core a correct statement of the law. The Eighth Circuit Model Jury Instructions recommend that, although a definition of "knowingly" generally need not be provided, *see United States v. Williams,* 923 F.2d 76, 78 (8th Cir.), *cert. denied,* 502 U.S. 841, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991), if the district judge elects to provide a definition, the following instruction is suggested:

> An act is done knowingly if the defendant is aware of the act and does not act [or fail to act] through ignorance, mistake, or accident. The government is not required to prove that the defendant knew that [his] [her] acts or omissions were unlawful. . . .

Eighth Circuit Model Criminal Jury Instruction 7.03 (1994 Edition) (alterations in original). After a careful review of our case law, we believe this suggested instruction is an accurate statement of the law. *See United States v. Hern,* 926 F.2d 764, 767 n. 5 (8th Cir.1991); *United States v. Enochs,* 857 F.2d 491, 493 (8th Cir.1988), *cert. denied,* 490 U.S. 1022, 109 S.Ct. 1749, 104 L.Ed.2d 186 (1989); *United States v. Udofot,* 711 F.2d 831, 835–37 (8th Cir.), *cert. denied,* 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234 (1983).

██ In the present case, the district court's statement that possession of a water pistol is not knowing possession of a gun is consistent with a claim of mistake; likewise, the court's statement that there is no requirement that one know that possession of a gun is a crime is correct. Section 922(g) is not one of those rare statutes which requires the government to prove that the defendant knew he was violating the law when his actions violative of the statute were accomplished. *Compare Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985), *and United States v. Marvin,* 687 F.2d 1221 (8th Cir.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983), *with Udofot,* 711 F.2d at 837. Therefore, we conclude that the district court's procedurally improper *ex parte* instruction to the jury did not cause either appellant prejudice and is no basis for reversal.

*C. Suppression of Evidence Discovered in Shulze's Home Pursuant to a Warrant*

Shulze moved to suppress evidence seized from his home on September 16, 1993; the district court overruled the motion. On September 16, 1993, Special Agent Michael W. Cameron of the Internal Revenue Service applied for and obtained from a United States Magistrate Judge what is described as a "financial warrant" to search Shulze's residence seeking, *inter alia,* financial and travel records, address and telephone records, employment documents, receipts, together with drug paraphernalia and firearms. The warrant's asserted purpose was to acquire information concerning the source of Shulze's income as well as the nature of his expenditures. Shulze contends that the warrant obtained was overbroad because it failed to particularly describe the items to be seized and was so facially deficient in that regard that the executing officers could not reasonably presume it to be valid.[2]

██ The Fourth Amendment requires that a search warrant describe with particularity the items to be seized and prohibits general, exploratory searches. *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). "Inclusion of a statutory reference can sufficiently limit the scope of a search and thus provide the necessary particularity." *Rickert v. Sweeney,* 813 F.2d 907, 909 (8th Cir.1987). In this case, Attachment II of the warrant described a page and a half of particular items to be seized. Specifically, the warrant sought "[f]irearms and ammunition," along with "[a]ny and all other instrumentalities, substances or documents which are evidence of violation of . . . Title 18 U.S.C. § . . . . 922. . . ." (Shulze's Addend. at 17.) This explicit reference to firearms and ammunition, along with the statutory reference relating to possession of firearms or ammunition by a felon, sufficiently limited the scope of the search to make it constitutionally permissible and not a general exploratory search.

---

**2.** The search of Schulze's home yielded over 200 rounds of .22 ammunition, along with a photograph dated October of 1989 showing Schulze holding a shotgun in one hand and a pheasant in the other.

We find that the cases Shulze relies upon, *In re Grand Jury Proceedings,* 716 F.2d 493 (8th Cir.1983), and *Rickert,* 813 F.2d at 907, are readily distinguishable from the facts at hand. For instance, in *Rickert,* the disputed warrant authorized IRS agents to search and seize evidence associated with violations of "the general conspiracy statute, 18 U.S.C. § 371, and general tax evasion statutes, 26 U.S.C. §§ 7201 and 7206(2)." 813 F.2d at 909. Relying on similar rulings from other courts, we held that the mere recitation of those general statutes did not provide any substantive limitations on the search. *Id.* Likewise, in *In re Grand Jury Proceedings,* the warrant authorized the seizure of all records pertaining to the defendant's bail bond business for a period of seven years with no other limitation. 716 F.2d at 497–98. We held that "[i]n the absence of any clearly demonstrated necessity," the warrant was "excessive and unreasonable" because it did not confine the search to specific types of documents for particular crimes "but authorized the seizure of all documents in Young's bail bond operations without any enumeration or specificity." *Id.* at 497–98.

To the contrary, the attachment to the warrant in this case outlined several specific statutes, among them 18 U.S.C. § 922, in addition to the general tax evasion and conspiracy statutes, which sufficiently narrowed the scope of the search. Moreover, the particular items described in the warrant were narrowly tailored to the particular types of crimes Shulze was suspected of committing. Therefore, we affirm the district court's denial of Shulze's motion to suppress evidence seized from his home on September 16, 1993.

### D. Use of Prior Felonies in Sentencing Shulze Under 18 U.S.C. § 924(e)(1)

After Shulze was found guilty of three counts under 18 U.S.C. § 922(g)(1), the district court enhanced his sentence pursuant to 18 U.S.C. § 924(e)(1) to the mandatory minimum sentence of 15 years upon determining that he had four prior burglary convictions under North Dakota law. Shulze argues that the district court erred in enhancing his sentence pursuant to § 924(e)(1) because he says two of his four prior burglary convictions do

not qualify as predicate convictions, thereby leaving him one conviction shy of the three predicate offenses required under the statute. Specifically, Shulze argues that because his civil rights have been restored under North Dakota law with respect to these two disputed convictions, under the dictates of 18 U.S.C. § 921(a)(20), these offenses may not be used for enhancement pursuant to § 924(e)(1). The government argues that Shulze's right to possess firearms has never been restored under North Dakota law since his first burglary conviction in 1978 and, therefore, the two disputed convictions do qualify as predicate offenses for sentence enhancement under § 924(e)(1).

■ Our review of this issue of statutory construction is de novo. *Thompson v. United States,* 989 F.2d 269, 270 (8th Cir.1993). As noted above, Shulze was convicted of three violations of 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess firearms or ammunition. The district court enhanced Shulze's sentence pursuant to 18 U.S.C. § 924(e)(1), which provides for a 15–year mandatory minimum sentence for "a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony...." A "violent felony" is defined in part as "any crime punishable by imprisonment for a term exceeding one year" and the definition specifically includes burglary. 18 U.S.C. § 924(e)(2)(B). In outlining what constitutes a "crime punishable by imprisonment for a term exceeding one year," section 921(a)(20) states in pertinent part:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction ... for which a person ... has had his civil rights restored shall not be considered a conviction for purposes of this chapter, unless such ... restoration of civil rights expressly provides that the person may not

ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

"[S]tate law determines what constitutes a prior state conviction for purposes of federal firearms statutes, including the effect of any state pardon, expungement or restoration of civil rights." *United States v. Wind,* 986 F.2d 1248, 1250 (8th Cir.1993). In addition, "[w]e have noted that for a person to have his civil rights restored by a state for the purposes of section 921(a)(20), the relevant state must actually have restored the felon's right to possess firearms." *United States v. Gipson,* 985 F.2d 412, 414 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 50 (1993). "[A] prior conviction is used for sentence enhancement if the defendant may not legally possess the firearm in the state that convicted him." *United States v. Wind,* 986 F.2d 1248, 1249 (8th Cir.1993) (Magill, J., concurring). Thus, in assessing whether Shulze has had his civil rights restored with respect to either of the disputed convictions, we must determine whether North Dakota has restored his right to possess firearms with respect to those offenses.

North Dakota law provides that one who has been convicted of a felony involving violence is prohibited from owning or possessing firearms for ten years, *see* N.D.Cent.Code Ann. § 62.1–02–01(1) (Michie Supp.1993), while one convicted of any other felony is under the same prohibition for five years. *See* N.D.Cent.Code Ann. § 62.1–02–01(2) (Michie Supp.1993). These prohibitions against possessing firearms run from "the date of conviction or release from incarceration or probation, whichever is the latter." N.D.Cent.Code Ann. §§ 62.1–02–01(1)–(2) (Michie Supp.1993). While Shulze's burglary convictions are no doubt felonies under North Dakota law and, while it is clear that they are also defined as violent felonies under federal law for the purposes of the enhancement under § 924(e)(1), it is not clear whether these convictions qualify under North Dakota law as violent felonies triggering the ten-year state firearms prohibition or as any other felony triggering the five-year state prohibition; we will assume for the purposes of deciding this case that Shulze's

North Dakota burglary offenses are nonviolent felonies under North Dakota law, and that the five-year state firearms prohibition is applicable.

Shulze's Presentence Investigation Report (PSI) indicates that he was sentenced in March of 1978 for the first burglary conviction and was ultimately released from incarceration for this offense in April of 1979; therefore, he was prohibited from possessing firearms with respect to this offense until April of 1984. Before that date, however, in March of 1981, Shulze was simultaneously sentenced for three separate burglary convictions and two separate convictions for theft of property. He received a five-year consecutive sentence on each of the five charges, for a total of 25 years of imprisonment; ten years of this sentence was suspended with a term of probation imposed. Shulze was paroled on these charges in November 1986 to a consecutive sentence for an unrelated escape offense and was subsequently released from incarceration on parole on April 1, 1987. He remained on parole until March 19, 1991, at which time he commenced his ten-year period of probation for the suspended sentence; his probation was terminated early in March of 1992. On that date, North Dakota's five-year firearm prohibition began. Shulze will not be authorized to possess firearms under North Dakota law until March of 1997.

Due to the overlap of the firearms prohibitions caused by his multiple offenses, Shulze has continuously been prohibited from possessing a firearm since he was sentenced for his first burglary in March of 1978. However, Shulze argues that we should not look to the overlap effect of the firearms prohibitions but instead should examine each offense in isolation to determine whether his right to possess firearms has actually been restored with respect to that particular offense. Shulze would have us ignore the fact that since his 1978 conviction, he has never been allowed to possess a firearm in North Dakota.

Shulze's interpretation of § 921(a)(20) was rejected in *United States v. Clark,* 993 F.2d 402 (4th Cir.1993). The Fourth Circuit, faced with this same type of "view in isolation" argument, adopted an approach which

requires effective and actual restoration of the right to possess firearms as opposed to merely formal restoration of that right in order for § 921(a)(20) to preclude use of a prior conviction. *Id.* at 405. The court ruled that "as a matter of *federal* law [ ] a state conviction for a violent felony is not excluded from consideration under § 924(e) by the provisions of § 921(a)(20) until the law of the relevant state effectively restores to the defendant the right to possess firearms." *Id. See also United States v. Burns,* 934 F.2d 1157, 1160–61 (10th Cir.1991) (holding that because Burns' right to possess firearms had not been effectively restored, three prior burglary convictions qualified as "violent felonies" under §§ 921(a)(20) and 924(e)(2)(B), serving as a proper basis for enhancing his sentence under § 924(e)(1)), *cert. denied,* 502 U.S. 1124, 112 S.Ct. 1246, 117 L.Ed.2d 478 (1992). We agree with the reasoning of the Fourth and Tenth Circuits and require effective and actual restoration of the right to possess firearms in order for a conviction to be excludable under § 921(a)(20).

In this case, the overlap of the five-year firearms prohibitions which accompanies each of Shulze's convictions has barred him from possessing firearms since his first burglary conviction in 1978. Shulze's right to possess firearms in North Dakota has never effectively been restored since that date. Therefore, all of his burglary convictions since that date may be considered for enhancement under § 924(e), and the district court committed no error in using the two disputed convictions to enhance his sentence.

### III.

For the reasons enumerated above, we affirm the judgments of the district court in both cases.