Derry District Court
No. 2008-372

# THE STATE OF NEW HAMPSHIRE

## v.

## CHRISTOPHER STEEVES

Argued: March 17, 2009
Opinion Issued: May 7, 2009

*Kelly A. Ayotte*, attorney general (*Francesca Stabile*, attorney, on the brief and orally), for the State.

*Law Office of Michael Bowser, P.C.*, of Nashua (*Michael S. Bowser, Jr.* on the brief and orally), for the defendant.

HICKS, J. Following his conviction for driving while intoxicated, *see* RSA 265-A:2, I (Supp. 2008), the defendant, Christopher Steeves, appeals a ruling of the Derry District Court (*Coughlin,* J.) denying his motion to suppress. We affirm.

The record supports the following. In August 2007, Officer Sean Doyle of the Londonderry Police Department was traveling south on Route 28 at 1:30 a.m. He observed the defendant and one passenger straddling an idling motorcycle on the roadside. According to Officer Doyle, the road had a fog line but no breakdown lane. Officer Doyle pulled behind the motorcycle "to see if the operator needed any assistance." He activated his spotlight and pointed it towards the motorcycle. In addition, he activated his takedown lights, which he explained at trial were "white lights on the top of [the] light bar that face forward." He also activated his rear blue lights, but not his front blue lights or the emergency octagon on the front of his cruiser.

Officer Doyle testified that before he got out of his cruiser, "the passenger jumped off the back [of the motorcycle] and started approaching." In response, Officer Doyle "ordered him away from [the] cruiser." Officer Doyle then exited his vehicle and spoke with the passenger, who in his opinion smelled of alcohol. The passenger informed Officer Doyle that

he had been drinking at Game Time, a sports bar located two to three hundred feet away. Game Time had closed at 1:00 a.m. Officer Doyle instructed the passenger to stand further off the roadway and then approached the defendant.

Officer Doyle "engaged [the defendant in] conversation and asked him for his license and registration." After the defendant produced his registration, Officer Doyle twice more "ask[ed]" for his license. During this exchange, he noticed that the defendant's movements were "slow and uncoordinated," and that he smelled of alcohol. As the defendant "fumbled" in his wallet, Officer Doyle noticed that his "eyes were glassy and bloodshot." He asked the defendant where he had been. The defendant first said he had been at "Tim's house," though he could not provide an address. After the passenger "chimed in . . . and stated . . . just to be honest," the defendant admitted coming from Game Time. The defendant agreed to "perform[] a few quick tests while seated on the motorcycle."

Although the defendant successfully recited the alphabet from E through P, Officer Doyle testified that the defendant did so "slow[ly] and slurred." Officer Doyle further testified that the defendant committed several errors on the "finger dexterity test" by failing to follow instructions and also by counting "the wrong number on the wrong finger" three times. Officer Doyle then requested backup. Upon its arrival, he asked the defendant to step away from the motorcycle in order to administer other field sobriety tests.

As the defendant stepped off the motorcycle, he failed to lock the kickstand and the motorcycle tipped over. After picking it up, the defendant failed the walk-and-turn test and the one-legged stand. Officer Doyle attempted to administer the horizontal gaze nystagmus test several times, but abandoned this effort because the defendant would not keep his head still and focus on the pen. Officer Doyle placed him under arrest. The defendant then refused to submit to a blood test.

Before trial, the defendant moved to suppress "evidence seized from [him] including statements . . . and any incriminating observations." The court deferred ruling on this motion. At the close of testimony, the court denied the motion.

On appeal, the defendant argues that Officer Doyle lacked reasonable suspicion to effectuate the initial stop. He also argues that Officer Doyle cannot justify the stop under the community caretaking exception to the warrant requirement. In support of his argument, the defendant cites the Fourth Amendment to the Federal Constitution and Part I, Article 19 of the State Constitution.

We first address the defendant's arguments under the State Constitution, and cite federal opinions for guidance only. *State v. Ball*, 124 N.H. 226,

231-33 (1983). "In reviewing the trial court's rulings, we accept its factual findings unless they lack support in the record or are clearly erroneous." *State v. Beauchesne*, 151 N.H. 803, 809 (2005). "Our review of the trial court's legal conclusions, however, is *de novo*." *Id.*

In deciding whether the officer conducted a lawful investigatory stop, we conduct a two-step inquiry: first, we determine when the defendant was seized; second, we determine whether, at that time, the officer possessed a reasonable suspicion that the defendant was, had been or was about to be engaged in criminal activity. *State v. Pepin*, 155 N.H. 364, 365 (2007).

Both arguments raised by the defendant presuppose that Officer Doyle effectuated a seizure upon pulling behind the motorcycle and activating his emergency lights. We disagree.

"[N]ot all personal intercourse between policemen and citizens involves 'seizures' of persons." *State v. Cote*, 129 N.H. 358, 364 (1987) (quotation omitted). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (quotation omitted). We objectively determine whether police executed a seizure. *Id.* at 365. "We . . . ask whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." *Id.* (quotation omitted).

"Circumstances indicating a 'show of authority' might include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Licks*, 154 N.H. 491, 493 (2006) (quotation omitted).

Pulling behind a vehicle stopped on the roadside does not, by itself, constitute a seizure. "Numerous courts recognize that when an officer approaches a person . . . in a parked car and asks questions, this in and of itself does not constitute a seizure." *Id.* Similarly, Officer Doyle's *requests* for license and registration did not effectuate a seizure. "A seizure does not occur simply because a police officer approaches an individual and . . . asks to examine the individual's identification . . . ." *State v. Brown*, 155 N.H. 164, 168 (2007); *accord* 4 W. LAFAVE, *Search and Seizure* § 9.4(a), at 431-32 (4th ed. 2004) ("[A] 'request for identification' . . . do[es] not by [itself] make an encounter coercive." (quotation and footnote omitted)); *United States v. Mendenhall*, 446 U.S. 544, 555 (1980) (opinion of Stewart, J.) (concluding that no seizure occurred where agents approached suspect in airport, identified themselves and requested her identification and ticket).

■ Moreover, here, as in *Licks*, a single officer approached a parked vehicle from behind, parked his cruiser so as not to block or restrict the defendant's movement, kept his weapon holstered and refrained from issuing orders to the defendant. Although Officer Doyle ordered the *passenger* away from his cruiser, this was neither directed towards the defendant nor did its substance reasonably restrain the defendant's freedom in any significant way.

■ Furthermore, like the officer in *Licks* who used a flashlight to illuminate a parked car, Officer Doyle activated his spotlight and two takedown lights in order to illuminate what would otherwise be plainly visible in daylight. These were not acts of seizure because the time and place of the encounter both indicate that such lighting was necessary to view and evaluate the situation. *See United States v. Clements*, 522 F.3d 790, 794-95 (7th Cir.) (holding no seizure occurred where officers approached parked vehicle at night and activated emergency lights and spotlight), *cert. denied*, 129 S. Ct. 130 (2008); *State v. O'Neill*, 62 P.3d 489, 497 (Wash. 2003) (holding that no seizure occurred when officer pulled into parking lot and shined spotlight and flashlight into parked car because such devices are commonly used to illuminate dark areas).

■ The activation of Officer Doyle's blue lights is a closer question. Even though law enforcement officers are authorized to activate emergency lights for a variety of reasons, including "when parked on or adjacent to the highway to warn other traffic of a hazard or obstruction," RSA 266:78-f (Supp. 2008), doing so behind a parked automobile often constitutes a seizure. *See, e.g., State v. Williams*, 185 S.W.3d 311, 317 (Tenn. 2006) (collecting cases). *But see United States v. Dockter*, 58 F.3d 1284, 1287 (8th Cir. 1995), *cert. denied*, 516 U.S. 1122 (1996); *Com. v. Evans*, 764 N.E.2d 841, 844-45 (Mass. 2002); *State v. Hanson*, 504 N.W.2d 219, 220 (Minn. 1993). The reason is obvious — drivers simply are not free to disregard blue lights. *See* RSA 265:3, I (Supp. 2008) (entitled "Obedience to Police Officers"); RSA 265:4 (2004) (criminalizing purposeful neglect of signal to stop or "willful[] attempt to elude pursuit").

■ We hold that, on these facts, Officer Doyle did not effectuate a seizure by activating the rear blue lights. First and foremost, we note that he activated only his *rear* blue lights. *See Clarke v. Com.*, 527 S.E.2d 484, 492 (Va. Ct. App. 2000) (holding activation of rear blue lights did not constitute seizure). In addition, there was a strong need to warn passing traffic of their presence because the road lacked a breakdown lane. Although the rear-facing blue lights may have been visible to the defendant, the totality of circumstances would have communicated to "[a] reasonable person . . .

that the officer was . . . [just] checking to see what was going on and to offer help if needed," *Hanson*, 504 N.W.2d at 220, and not "that [the defendant] was not free to leave," *Cote*, 129 N.H. at 365 (quotation omitted). *See Florida v. Bostick*, 501 U.S. 429, 438 (1991) ("[T]he 'reasonable person' test presupposes an *innocent* person."); *Licks*, 154 N.H. at 493 (stating *Bostick* is consistent with Part I, Article 19).

■ Because Officer Doyle had not yet seized the defendant upon first speaking with him, *see Beauchesne*, 151 N.H. at 809, and because the defendant's appearance and conduct created a reasonable suspicion that he was driving under the influence of alcohol, *see Pepin*, 155 N.H. at 366 (discussing reasonable suspicion), Officer Doyle lawfully administered additional field sobriety tests, *see State v. Livingston*, 153 N.H. 399, 404-05 (2006) (discussing proper scope of an investigatory stop), and arrested the defendant after determining that he was impaired, *see* RSA 594:10, I (Supp. 2008). Thus, we need not consider the community caretaking arguments because there exists an adequate and independent alternative exception to the warrant requirement of Part I, Article 19.

Because the Federal Constitution offers the defendant no greater protection under these circumstances, *compare Bostick*, 501 U.S. at 434 (discussing standard for seizure under Fourth Amendment), *with Licks*, 154 N.H. at 493 (stating that standard for seizure in *Bostick* is consistent with Part I, Article 19), we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.