# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0048, <u>State of New Hampshire v. Andrew Brown</u>, the court on August 30, 2018, issued the following order:**

The following order, originally issued on July 3, 2018, is being reissued to clarify the description of the officers' observation as to the vehicles in the parking lot, which appears in the paragraph beginning on the bottom of page 2 of this order.

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Andrew Brown, appeals his conviction, following a bench trial in the Circuit Court (<u>Moore</u>, J.), on a violation-level charge of driving after suspension. <u>See</u> RSA 263:64 (2014). He argues that the trial court erred by denying his motion to suppress evidence obtained without a warrant on the basis that he was not "seized" for purposes of Part I, Article 19 of the State Constitution at the time of his encounter with law enforcement officers. We reverse and remand.

Part I, Article 19 of the State Constitution guarantees every citizen "a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." A warrantless search is <u>per</u> <u>se</u> unreasonable unless it falls within a judicially-crafted exception to the warrant requirement. <u>State v. Newcomb</u>, 161 N.H. 666, 670 (2011). The State bears the burden of proving that a particular warrantless search falls within an exception. <u>Id</u>. In reviewing the trial court's ruling on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous, and review its legal conclusions <u>de</u> <u>novo</u>. <u>Id</u>.

It is well-settled that a police officer may, within the parameters of Part I, Article 19 of the New Hampshire Constitution, detain a motorist if the officer has reasonable suspicion, based on specific, articulable facts taken with all rational inferences from those facts, that the motorist has been, is, or is about to be, engaged in criminal activity. <u>State v. Dalton</u>, 165 N.H. 263, 265 (2013); <u>see</u> <u>State v. McKinnon-Andrews</u>, 151 N.H. 19, 22-23 (2004). Once the officer has properly initiated the stop, the officer may ask a moderate number of questions to determine the person's identity and confirm or dispel his or her suspicion. <u>State v. Michelson</u>, 160 N.H. 270, 275 (2010). In determining the lawfulness of an investigatory stop, we engage in a two-part analysis: first, we consider whether the defendant in fact was "seized" at the time of the

encounter, and second, we examine whether the officer had reasonable suspicion at the time that the defendant was, had been, or was about to be, engaged in criminal activity. State v. Steeves, 158 N.H. 672, 675 (2009).

A "seizure" of a person occurs for purposes of Part I, Article 19 when the police officer, by means of physical force or some show of authority, has in some way restrained the liberty of a citizen. Id. When determining whether a seizure has occurred, we examine whether, in view of all of the circumstances surrounding the encounter, a reasonable person would have believed that he or she was free to leave or terminate the encounter with law enforcement. Id.; State v. Licks, 154 N.H. 491, 493 (2006). Circumstances that might denote such a show of authority include the threatening presence of several officers, an officer's display of a weapon, physical contact by an officer with the defendant, or the officer's use of language or a tone of voice demonstrating that compliance with the officer's requests is compelled. Steeves, 158 N.H. at 675. Although merely approaching a stopped motorist and requesting identification does not amount to a seizure for purposes of Part I, Article 19, the manner in which officers approach the motorist may give rise to a reasonable belief that the motorist is not free to leave. See id. at 675-76 (observing that pulling behind a stopped vehicle does not, alone, constitute a seizure, but that doing so with blue lights engaged will often constitute a seizure because the motorist is not free to ignore the flashing blue lights).

The evidence in this case establishes that, at the time of the defendant's encounter with law enforcement, he was parked in a parking lot at approximately 9:30 p.m. The lot was one of two interconnected lots servicing a business, described by the law enforcement officer who initiated the encounter as an "upper rear lot" and a "lower lot." The defendant was seated in the driver's seat of a car parked in the back of the upper lot, with two other passengers. The parking space was bordered by a wooded tree line and the upper lot was otherwise empty, with the exception of a sedan that was parked next to the passenger's side of the defendant's car. An egress from the upper lot to a public highway existed to the left of the defendant's vehicle and on a line perpendicular with the vehicle's location. The lower lot and business were located in the direction that the two cars were pointed.

At that time, two Nashua police officers were conducting a routine patrol of the parking lots in an unmarked cruiser because the area had a known association with narcotic and prostitution-related offenses. Both officers were in plain clothes and wore badges that were clearly visible in the center of their chests. The defendant's car caught the officers' attention because all of the cars associated with the business were parked in the well-lit lower lot, while there were no vehicles in the dimly-lit upper lot, other than the two cars. The officers could see that the defendant's car was occupied. They approached the car in their cruiser, driving directly toward it with their headlights engaged and stopped approximately ten feet from it in a slightly-offset and slightly-canted

2

position so that the passenger-side front corner of the cruiser was facing the driver-side front corner of the defendant's car. Immediately upon stopping, the officers exited the cruiser and approached the defendant in order "to achieve tactical surprise." The officer who was driving approached the defendant, while his partner crossed directly in front of the defendant's car and approached the passenger-side of the defendant's car.

The officer who was driving testified that he positioned the cruiser in this manner so that, if necessary, he could use the cruiser's engine block for cover if the occupants of the defendant's car fired upon them, and so that his partner would have a direct view of the driver and other occupants when he exited. As it was positioned, the cruiser was between the defendant's car and the exit from the upper lot to the public highway. The officer testified, however, that if the defendant had so desired, he could have driven to his right and then either continued traveling in that same direction to the lower lot and its exit points or driven around the cruiser to the upper lot's exit. If the defendant had driven immediately to the left, he would have struck the cruiser.

During his direct examination, the defendant claimed that a second police cruiser had arrived around the same time and was positioned facing the passenger-side front corner of his car, although the officer had disputed this assertion. When he was then asked whether, in light of the positioning of the cruisers, he was "able to leave at all," the defendant answered, "I could if I wanted to. I mean it's a small Dodge Dart. I could have whipped to the right, but . . . I don't have a license so I didn't drive." On cross-examination, when asked whether he had testified on direct that he "could have left if [he] wanted to," the defendant answered, "No, I did not. If I wanted to, I'd have to hit a cop car or turn real sharp with a small Dodge Dart. . . . That's what I said."

In denying the motion to suppress, the trial court reasoned, "I don't believe that [the defendant] was detained . . . . I don't believe [the encounter] rises to that level, . . . as testified to [by] the officer and from my review of the testimony of both parties." The trial court did not address whether the officer had sufficient reasonable suspicion to initiate the stop.

Upon this record, we conclude that the trial court erred as a matter of law. Multiple officers drove directly at and stopped directly in front of the defendant, who was legally parked in an essentially empty parking lot. The officers stopped their cruiser approximately ten feet from the defendant's car in a manner that obstructed his access to the lot's nearest exit, and they immediately alighted from the cruiser and approached the defendant, with badges displayed, in a manner meant "to achieve tactical surprise," with one officer passing directly in front of the defendant's car. To the extent the State argues that the defendant's testimony establishes that he could have left, we emphasize that the test is whether a reasonable person, under all the circumstances surrounding the encounter, would have felt free to leave.

3

Steeves, 158 N.H. at 675; see State v. Riley, 126 N.H. 257, 262-63 (1985). The defendant's testimony was not that he believed he was free to leave, but that it would have been physically possible to have "whipped [the car] to the right" of the cruiser.

We conclude that, in light of all of the circumstances of the officers' encounter with the defendant in this case, a reasonable person would not have felt free to leave and, thus, the defendant was "seized" for purposes of Part I, Article 19 of the State Constitution. Compare Licks, 154 N.H. at 494 (finding that a reasonable person would have felt free to terminate an encounter with law enforcement when a single officer approached the defendant, who was seated in the driver's seat of a car in a parking lot, on foot from the rear of the defendant's car after parking the cruiser away from the defendant's vehicle), with State v. McKeown, 151 N.H. 95, 97 (2004) (finding that a reasonable person would not have felt free to terminate an encounter with a marine officer after the officer piloted his marked boat directly toward the defendant's kayak from a quarter of a mile away, and engaged the defendant when he was fifty feet from the defendant). Because the trial court did not address whether the officers had sufficient reasonable suspicion to justify the stop, we reverse and remand for further proceedings consistent with this order.

Reversed and remanded.

LYNN, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Eileen Fox,**
**Clerk**

4