Grafton
No. 2013-392

## THE STATE OF NEW HAMPSHIRE

v.

## KEVIN BALCH

Argued: May 15, 2014
Opinion Issued: January 29, 2015

*Joseph A. Foster*, attorney general (*Lisa L. Wolford*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. After a jury trial in Superior Court (*Bornstein*, J.), the defendant, Kevin Balch, was convicted on two counts of burglary, six counts of receiving stolen property, and six counts of violating the armed career criminal statute. RSA 635:1 (2007) (amended 2014); RSA 637:7 (2007); RSA 637:11 (2007) (amended 2010); RSA 159:3-a (2014). On appeal, the defendant challenges the sentence imposed pursuant to the armed career criminal statute, RSA 159:3-a, and argues that the trial court erred by construing it to: (1) permit a conviction and sentence for each individual firearm he possessed on a single occasion; (2) require that each sentence be served consecutively rather than concurrently; and (3) prohibit the trial court from deferring some or all of said sentences. We affirm.

The record reflects the following facts. On May 16, 2013, the trial court sentenced the defendant to: three and a half to seven years in state prison for each count of burglary, to be served concurrently with each other but consecutively with the last RSA 159:3-a sentence; 10 to 20 years for each count of violating RSA 159:3-a, to be served consecutively with each other and the burglary sentences; and a suspended sentence of 7.5 to 15 years for each count of receiving stolen property. The total prison sentence range is 63.5 to 127 years — essentially a sentence of imprisonment for life. During the sentencing hearing, both the State and the trial court expressed the belief that RSA 159:3-a requires the sentences to run consecutively to each other and to sentences imposed for other convictions. The defendant's attorney argued that imposing such a severe sentence for class B felonies is unconstitutional. The court rejected the constitutional challenge and cited the statutory requirements as one of the factors in determining the defendant's sentence. This appeal followed.

On appeal, the defendant raises a single issue for our consideration: whether the trial court erred in interpreting RSA 159:3-a to require the imposition of six consecutive sentences based upon his six convictions arising from an incident in which he possessed six firearms on a single

occasion. In addressing that issue, the defendant argues: (1) that the legislature intended the "unit of prosecution" under RSA 159:3-a to be each occurrence of possession rather than each individual firearm; (2) that sentences imposed under RSA 159:3-a can be served concurrently; and (3) that RSA 159:3-a permits trial courts to defer sentences imposed under that statute. The defendant admits that these arguments were neither raised before nor addressed by the trial court, but he asks us to review them to determine whether the trial court's interpretation and application of law constituted plain error. *See* SUP. CT. R. 16-A.

■ The plain error rule allows us to consider errors not brought to the attention of the trial court. *State v. Almodovar*, 158 N.H. 548, 553 (2009). Nevertheless, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. *Id.* For us to find error under the rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Id.*

All of the defendant's arguments challenge the trial court's interpretation and application of RSA 159:3-a. To resolve these challenges, we must engage in statutory interpretation. *See State v. Ravell*, 155 N.H. 280, 282 (2007). The interpretation of a statute is a question of law, which we review *de novo*. *State v. Dor*, 165 N.H. 198, 200 (2013). We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Id.* When we interpret a statute, we look first to the statute's language, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* We do not read words or phrases in isolation, but in the context of the entire statutory scheme. *Id.* Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* We will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Smith v. City of Franklin*, 159 N.H. 585, 588 (2010). This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *LLK Trust v. Town of Wolfeboro*, 159 N.H. 734, 736 (2010).

We first consider whether RSA 159:3-a defines the unit of prosecution as each individual firearm that a defendant possesses rather than each individual instance of possession regardless of the number of firearms possessed. RSA 159:3-a provides, in relevant part:

> No person who has been convicted of any combination of 3 or more felonies in this state or any other state under homicide, assault,

sexual assault, arson, burglary, robbery, extortion, child pornography, or controlled drug laws, *shall own or have in his possession or under his control, a pistol, revolver, rifle, shotgun, or any other firearm.*

RSA 159:3-a, I (emphasis added). This language is nearly identical to language used in New Hampshire's felon-in-possession statute, RSA 159:3 (2014), which provides that:

█ A person is guilty of a class B felony if he:

(a) *Owns or has in his possession or under his control, a pistol, revolver, or other firearm* . . . and

(b) Has been convicted in either a state or federal court in this or any other state . . . of [certain felonies].

RSA 159:3, I (emphasis added). We have held that the emphasized language in RSA 159:3 defines the unit of prosecution as each individual firearm possessed by a qualifying felon. *State v. Stratton,* 132 N.H. 451, 455 (1989). The defendant contends that, despite the similarity in language, we need not conclude that the legislature intended the same unit of prosecution for RSA 159:3-a as it did for RSA 159:3. We disagree.

██ We generally assume that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter. *State Employees Assoc. of N.H. v. N.H. Div. of Personnel,* 158 N.H. 338, 345 (2009). Thus, unless the context indicates otherwise, words or phrases in a provision that were used in a prior act pertaining to the same subject matter will be construed in the same sense. *Id.* Here, RSA 159:3-a appears in the same chapter immediately after RSA 159:3, both statutes relate to the same subject matter, both statutes define felonious conduct, and both statutes have the same goal of preventing convicted felons from possessing firearms. Although, as the defendant correctly contends, RSA 159:3-a was enacted before we decided *Stratton,* and although it imposes harsh penalties upon career criminals who possess firearms, we are not persuaded that these considerations require us to interpret the language in RSA 159:3-a differently from the effectively identical language in RSA 159:3.

█ Deciding whether to impose a mandatory penalty for a criminal act is a policy decision that the New Hampshire Constitution empowers the legislature to make. *State v. Dean,* 115 N.H. 520, 523 (1975). The wisdom and reasonableness of the legislative scheme are for the legislature, not the

courts, to determine, and disputes regarding such should be addressed to the General Court. *Blackthorne Group v. Pines of Newmarket*, 150 N.H. 804, 810 (2004). Accordingly, we conclude that the plain language of RSA 159:3-a demonstrates that the legislature intended to adopt each individual firearm possessed as the unit of prosecution under RSA 159:3-a.[1]

■ Furthermore, we find no justification for overruling our decision in *Stratton*. The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results. *State v. Quintero*, 162 N.H. 526, 532 (2011). Nevertheless, we will on rare occasion overrule past decisions. *See, e.g., id.* at 538. The key question in determining whether to overrule a prior decision is not whether we disagree with it, but whether it "has come to be seen so clearly as error that its enforcement was for that very reason doomed." *State v. Perry*, 166 N.H. 716, 720 (2014). We consider four factors in determining whether a prior decision has come to be seen as clear error: (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification. *Quintero*, 162 N.H. at 533. Evaluation of the four factors requires balancing the various interests involved because no single factor is dispositive and the factors are not meant to be "rigidly applied or blindly followed." *Id.*

The defendant concedes that factor (4) is inapplicable. Accordingly we will limit our analysis to the first three factors. None of the defendant's arguments convince us that overruling *Stratton* is warranted.

■ The first factor examines whether a rule has become difficult or impractical for trial courts to apply. *See id.* at 533-35 (detailing the difficulty of applying a given rule in subsequent cases). The first factor weighs against overruling when a rule is easy to apply and understand. *See Kalil v. Town of Dummer Zoning Bd. of Adjustment*, 159 N.H. 725, 732 (2010). *Stratton* decided that the unit of prosecution pursuant to RSA 159:3 is each

---

[1] Because we have concluded that the plain language of the statute defines the unit of prosecution, we need not address the defendant's arguments regarding the legislative history. *See Prof'l Firefighters of N.H. v. HealthTrust*, 151 N.H. 501, 503 (2004) ("We first look to the plain meaning of the words used in the statute, and consider legislative history only if the statutory language is ambiguous.").

individual firearm a felon possessed, which is a simple rule to apply and understand.[2] Thus, it has retained its practicality and simplicity.

The second factor does not apply to this case. It concerns situations in which members of society may have developed operations or planned a course of action in reliance upon the challenged decision and, therefore, overruling that decision would create a special hardship for those affected. *See, e.g., Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 855 (1992) (describing rule). There is no suggestion that members of society plan their conduct in reliance upon our ruling in *Stratton. See Quintero*, 162 N.H. at 537.

The third factor concerns whether the law has developed in such a manner as to undercut the prior rule. *See id.* at 536. Such development could arise upon the promulgation of new laws or rules that render past decisions obsolete or upon the formulation of law across multiple jurisdictions in a manner that is discordant with the prior rule. *See, e.g., id.* at 536-37 (detailing how a new superior court rule rendered a prior holding unnecessary); *State v. Matthews*, 157 N.H. 415, 419-20 (2008) (overruling prior holdings due to evolution of case law from other jurisdictions). The key, however, is that the law must have developed. The defendant argues that the law in other jurisdictions has developed contrary to our decision in *Stratton*. We note, however, that other jurisdictions interpreting similar statutes are divided as to whether the unit of prosecution is each firearm or each instance of possession. *See, e.g., Gibson v. State*, 735 S.E.2d 290, 291 (Ga. Ct. App. 2012) (each firearm); *People v. Carter*, 821 N.E.2d 233, 239-40 (Ill. 2004), *superseded by statute as recognized in People v. Sotelo*, 968 N.E.2d 687, 691 (Ill. App. Ct. 2012) (each instance of possession); *State v. Lindsey*, 583 So. 2d 1200, 1204 (La. Ct. App. 1991) (each firearm); *State v. Garris*, 663 S.E.2d 340, 348 (N.C. 2008) (each instance of possession). The unit of prosecution based upon each firearm has not been discarded as a remnant of some bygone era. Instead, both it and the penalty imposed for violating the law are matters of policy for the legislature, rather than the judiciary, to determine. Thus, nothing suggests any development in the law that renders our decision in *Stratton* obsolete. Accordingly, we conclude that no basis exists for overruling *Stratton* and that the trial court did not err in sentencing the defendant for multiple convictions under RSA 159:3-a.

---

[2] We recognize that the defendant argues that *Stratton* becomes unworkable when applied to RSA 159:3-a. This argument is not related to the stare decisis factors and, instead, addresses concerns related to the applicability of *Stratton* to RSA 159:3-a, which we have previously addressed.

We next consider whether RSA 159:3-a requires consecutive sentencing and prohibits the trial court from deferring any of the sentences. Both arguments require us to interpret RSA 159:3-a, III, which states, in relevant part:

> *Notwithstanding any other provision of law*, neither the whole, nor any part of the minimum mandatory sentence provided under paragraph II shall be served concurrently with *any other term*, nor shall the whole or any part of *such additional term* of imprisonment be suspended or deferred. No action brought to enforce sentencing under this section shall be continued for sentencing, nor shall the provisions of RSA 651:20 relative to suspensions or RSA 651-A relative to parole apply to any sentence of imprisonment imposed.

RSA 159:3-a, III (emphasis added). The defendant contends that paragraph III's use of the phrases "any other term" and "such additional term" indicates a legislative intent to refer only to sentences imposed pursuant to statutes other than RSA 159:3-a. We disagree.

 Generally, we apply the ordinary rules of grammar and common usage to assist us in interpreting a statute whose meaning depends heavily on sentence structure. *See* 2A N. SINGER & J.D. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 47:1, at 277-78 (7th ed. 2007). Here, the parties ask us to construe the phrases "any other term" and "such additional term."

 We examine the language of paragraph III of the statute in combination with paragraph II, which provides: "[a]ny person who violates paragraph I shall be guilty of *a felony* and . . . shall be sentenced to *a minimum mandatory term* of 10 years imprisonment." RSA 159:3-a, II (emphasis added). These two paragraphs, read together, express legislative intent to limit the trial court's ability to mitigate the severity of the mandatory sentence. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines "other," in relevant part, to mean "not being the one (as of two or more) first mentioned or of primary concern." It defines "additional" to mean "existing or coming by way of addition," and "addition" to mean "something added that improves or increases value." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 24, 1598 (unabridged ed. 2002). Accordingly, a plain reading of the relevant sentence in paragraph III, along with paragraph II, indicates that the phrases in question include any term of imprisonment other than that imposed pursuant to the requirements of RSA 159:3-a, II. RSA 159:3-a, III.

■ Paragraph II mandates a term of imprisonment of at least 10 years for *a single conviction* under the statute. RSA 159:3-a, II. When multiple convictions arise under the statute, the trial court must impose multiple terms of imprisonment. Paragraph II governs the mandatory sentence for a single conviction, and paragraph III governs how the sentence imposed pursuant to paragraph II will affect all other sentences for convictions under the statute. Thus, the words "other" and "additional" are not mere surplusage.

■ Given our understanding of the phrases "any other term" and "such additional term," we disagree with the defendant that his sentence was contrary to the language of RSA 159:3-a. The defendant was convicted of six violations of RSA 159:3-a. Pursuant to the provisions of RSA 159:3-a, II, the trial court sentenced him to six terms of 10 to 20 years in prison. The trial court ordered that the sentences be served consecutively and did not defer or suspend any of the sentences. We conclude that the trial court properly applied the sentencing requirements of RSA 159:3-a. For each sentence imposed pursuant to RSA 159:3-a, the other five sentences fall within the scope of "any other term" and "such additional term." Nothing in the conventional usage of "other" or "additional" suggests, as the defendant contends, that the legislature intended otherwise.

Despite our conclusion, we are concerned that the defendant will effectively serve a lifetime prison sentence. In examining the impact of mandatory minimum sentences on the federal level, several legal commentators have recommended either abolishing them or applying them in a manner that is: (1) narrowly tailored to apply only to those who warrant such punishment; (2) applied consistently; and (3) not excessively severe. *See, e.g.,* UNITED STATES SENTENCING COMMISSION, REPORT TO THE CONGRESS: MANDATORY MINIMUM PENALTIES IN THE FEDERAL CRIMINAL JUSTICE SYSTEM 345-48 (2011); ABA JUSTICE KENNEDY COMMISSION, REPORT WITH RECOMMENDATION TO THE ABA HOUSE OF DELEGATES 26 (2004) ("[M]andatory minimum sentences . . . should be avoided, so that sentencing courts may consider the unique characteristics of offenses and offenders that may warrant an increase or decrease in a sentence."); ABA CRIMINAL JUSTICE SECTION, STANDARDS FOR CRIMINAL JUSTICE ON SENTENCING § 18-3.21(b), at 132 (3d ed. 1994) ("A legislature should not prescribe a minimum term of total confinement for any offense."). Nevertheless, the judiciary cannot act as a super legislature; nor can it impose its will in place of those elected by the people of New

Hampshire to define criminal penalties, based upon policy considerations. Accordingly, we invite the legislature to reexamine the severe penalties established by RSA 159:3-a.

*Affirmed.*

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.