NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Belknap
No. 2014-0264


THE STATE OF NEW HAMPSHIRE

v.

CHRISTOPHER BOISVERT

Argued: May 13, 2015
Opinion Issued: September 22, 2015


Joseph A. Foster, attorney general (Elizabeth C. Woodcock, assistant attorney general, on the brief and orally), for the State.


Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.


CONBOY, J. The defendant, Christopher Boisvert, appeals his conviction for welfare fraud. See RSA 167:17-b, I(a) (2014); RSA 167:17-c, I(a) (2014). He argues that the Superior Court (O'Neill, J.) erred by denying: (1) the defendant's motion to dismiss that challenged the sufficiency of the evidence; and (2) his request to give an accomplice liability jury instruction. We affirm.

The record before us contains the following evidence. The defendant is the father of Carrie Gray's two children. He and Gray moved into Apartment 1 at 40 High Street in Bristol in 2009 or 2010. The defendant's name was

removed from the lease at some point prior to late 2010.  On December 31, 2010, the defendant filed an application for public assistance.  On January 14, 2011, he met with a department of health and human services representative and stated that he was homeless and had no resources; he was certified to receive benefits.  The defendant was recertified for benefits at six-month intervals, and again reported in June 2011 and December 2011 that he was homeless.  Between December 2010 and March 2012, Gray received medical, food stamp, and cash public assistance.  The total amount of assistance that she received was calculated based upon a household consisting only of Gray and her children.  She would not have been eligible for the same level of benefits if the defendant had disclosed that he was living in the apartment.

At some point, the special investigations unit of the department of health and human services received an allegation of welfare fraud concerning Gray.  After interviewing witnesses and reviewing records provided by Gray and the defendant, the investigator concluded that the case should be referred to the county attorney's office.  The defendant was subsequently indicted on one count of welfare fraud.  Because it was alleged that the value of the fraudulently obtained payments exceeded $1,000, the offense was classified as a class A felony.  See RSA 167:17-c, I(a).  The case went to trial, and at the close of the State's case, the defendant moved to dismiss the charge, arguing that the State had failed to present sufficient evidence that he was living with Gray during the relevant time period.  The trial court denied the motion, and the jury found the defendant guilty.  This appeal followed.

RSA 167:17-b, I(a) provides that no person shall "[b]y means of an intentionally false statement or misrepresentation or by impersonation or other fraudulent act or device, obtain or attempt to obtain, or aid or abet any person in obtaining any assistance or benefit or payment under RSA 161 or RSA 167 to which he is not entitled."  The indictment in this case alleged that the defendant "by means of a false statement or misrepresentation, reported that he was homeless to N.H. Department of Health and Human Services, aiding or abetting [Gray] in obtaining payment assistance to which [Gray] was not entitled, for N.H. Department of Health and Human Services medical, food stamp, and cash assistance."

The defendant first argues that the State failed to prove beyond a reasonable doubt that he made a misrepresentation when he reported that he was homeless.  To prevail on his challenge to the sufficiency of the evidence, the defendant must establish that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt.  State v. Costella, 166 N.H. 705, 709 (2014).

Because the defendant was charged with welfare fraud based upon his "false statement or misrepresentation" that he was "homeless," we must

2

determine the meaning of the word "homeless" to assess the sufficiency of the evidence. During deliberations, the jury requested that the trial court provide a definition of "homeless." The parties agreed to the trial court's proposed response that the jury "utilize the evidence submitted at trial in response to this question in rendering [its] verdict." We note at the outset that the welfare fraud statute does not address the issue of homelessness. Thus, regardless of how the legislature has defined "homeless" for the purposes of other statutes, those definitions are not controlling in our analysis here. In addressing the defendant's argument, we apply the commonly understood meaning of "homeless." Cf. Magoon v. Thoroughgood, 148 N.H. 139, 142 (2002) (holding that in absence of statutory definition or relevant case law, court would utilize dictionary definition to determine plain and ordinary meaning of "explicitly"). Accordingly, we decline the defendant's suggestion that we consider statutory definitions of "homeless" that may differ from its commonly understood definition.

Webster's Third New International Dictionary defines "homeless" as "having no home or permanent place of residence." Webster's Third New International Dictionary 1083 (unabridged ed. 2002). "Residence" is defined, in pertinent part, as "the act or fact of abiding or dwelling in a place for some time: an act of making one's home in a place." Id. at 1931. "Home" is defined, in pertinent part, as "the house and grounds with their appurtenances habitually occupied by a family: one's principal place of residence." Id. at 1082. We consider these definitions in our assessment of the defendant's challenge to the sufficiency of the evidence.

In support of his argument, the defendant asserts that, because the State presented no direct evidence that he resided in Gray's apartment during the relevant period, the circumstantial evidence must exclude all reasonable conclusions except guilt. See State v. Germain, 165 N.H. 350, 361 (2013) (holding that to prevail on challenge to sufficiency of evidence when evidence as to one or more elements of charged offense is solely circumstantial, defendant must establish that evidence does not exclude all reasonable conclusions except guilt). The State asserts that the evidence at trial included both direct and circumstantial evidence. We will assume, without deciding, that the evidence that the defendant resided in Apartment 1 was solely circumstantial.

The evidence included the testimony of the property manager for the High Street apartment complex, who testified that during the period covered by the indictment, he saw the defendant at the apartment "pretty much daily." He also testified that the defendant reported to him maintenance problems in the apartment. Another witness, who lived in the apartment complex, testified that she saw the defendant outside playing with his children "four or five times a week." The individual who administered the leases for the complex testified that although the defendant moved out of the apartment prior to 2011, he subsequently asked to have his name placed back on the lease. Bristol Police

Chief Lewis testified that on the evening of December 16, 2011, while he was conducting surveillance of Gray's apartment for unrelated reasons, he saw the defendant in the apartment. He further testified that when the defendant was arrested on the evening of February 17, 2012, he was arrested in Apartment 1. The deputy clerk for the second circuit court in Plymouth identified court documents in other cases in which the defendant was a party that were pending during the period covered by the indictment; the documents listed the defendant's address as Apartment 1, 40 High Street, Bristol. Although the defendant noted on one document that the High Street address was his mailing address, the jury was free to assess the veracity of this statement in the context of all the evidence. See id. at 361-62.

The testimony of the various witnesses supports the conclusion, beyond a reasonable doubt, that the defendant was living in Apartment 1 and that he lied when he reported to the department of health and human services that he was homeless. Given the record before us, we conclude that the defendant has failed to establish that the evidence did not exclude all reasonable conclusions except guilt. See id. at 361. Accordingly, the trial court did not err by denying the defendant's motion to dismiss.

The defendant also argues that the trial court erred by denying his request to give an accomplice liability jury instruction. At trial, the defendant asked the court to instruct on the principles of accomplice liability. He argued that he was entitled to the instruction because the State had charged him with the aid/abet variant of welfare fraud. He contended that because the statute contains this variant, accomplice liability is "directly a part of the statute." The trial court denied his request, and gave the following instruction:

> The definition of the crime of welfare fraud has four parts or elements. The State must prove each part or element beyond a reasonable doubt. Thus, the State must prove:
>
> 1. The Defendant acted purposely; and
>
> 2. The Defendant, by means of a false statement or misrepresentation, aided or abetted another person in obtaining welfare payment assistance; and
>
> 3. That the other person was not entitled to said welfare payment assistance; and
>
> 4. That the value of said payment assistance exceeded $1,000.

On appeal, the defendant argues that, under his proposed instruction, the State would have had to prove "that Gray had the purpose to commit the crime

4

of welfare fraud"; in contrast, under the court's instruction, the State had to prove only that he "intended that Gray receive benefits to which she was not entitled."

As the defendant correctly observes, this issue presents a question of statutory interpretation. Our review is therefore de novo. State v. Balch, 167 N.H. 329, 332 (2015). When we interpret a statute, we look first to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. Id. We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that it did not see fit to include. Id.

The welfare fraud statute, RSA 167:17-b (2014), is not included in the Criminal Code. Nor does it contain a requirement that the State prove the mental state of the third party who will benefit from the defendant's fraudulent acts. See State v. Moscone, 161 N.H. 355, 359-60 (2011) (declining to incorporate the "attempt" statute into separate statute criminalizing certain uses of computer).

The defendant cites State v. Hermsdorf, 135 N.H. 360 (1992) to support his contention that when "the State charges a defendant with committing the 'aiding/abetting' variant of RSA 167:17-b, I(a), the jury must find that the principal also committed the elements of the charged crime." Hermsdorf provides little guidance here.

In Hermsdorf, Gary Hermsdorf and the Queen City Pharmacy were indicted and convicted of Medicaid fraud. Hermsdorf, 135 N.H. at 362. On appeal, Hermsdorf argued that the trial court had impermissibly amended the indictment when it included the word "solicited" in its instructions. Id. at 367. Viewing the instructions in their entirety, we concluded that the trial court had not improperly amended the indictment. Id. at 368.

In reaching this conclusion, the Hermsdorf court cited the language of RSA 167:17-b, I(a) as "aid and abet" as opposed to the actual language of the statute — "aid or abet." The defendant cites our insertion of the conjunction "and" in Hermsdorf to argue that we should not rely upon "the statute's linking of 'aid' and 'abet' with a disjunctive 'or'" to support the conclusion that the State need not prove abetting if it can prove aiding. We disagree that Hermsdorf requires such a conclusion. The conjunction used between the words "aid" and "abet" in RSA 167:17-b, I(a), was not the focus of our analysis in Hermsdorf, and our holding in Hermsdorf did not address the issue currently before us. Moreover, to ignore the legislature's use of the disjunctive "or" would violate our established principles of statutory construction. See

5

<u>Balch</u>, 167 N.H. at 332 (legislative intent is determined from statute as written).

Construing the plain language of RSA 167:17-b, I(a), we conclude that, to obtain a conviction of the defendant for welfare fraud, the State was not required to prove that Gray also committed welfare fraud and that the defendant was aware of her culpable mental state. There is no indication that the legislature intended to import into the statute the law of accomplice liability. <u>See</u> RSA 626:8 (2007). Absent explicit statutory language, we decline to hold that a defendant charged with welfare fraud resulting in a third party improperly receiving benefits is absolved of criminal liability for his or her own misrepresentation or other fraudulent act when the third party does not have the same culpable mental state.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS and BASSETT, JJ., concurred.