Hillsborough-southern judicial district
No. 2009-402

THE STATE OF NEW HAMPSHIRE

v.

SOILUIS NIEVES

Argued: March 31, 2010
Opinion Issued: May 6, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Soiluis Nieves, was charged with possession of a controlled drug with intent to sell and conspiracy to commit sale of a controlled drug. *See* RSA 318-B:2 (Supp. 2008); RSA 629:3 (2007). The State appeals an order of the Superior Court (*Hicks*, J.) granting the defendant's motion to suppress evidence seized under the "plain view" exception to the warrant requirement. We reverse and remand.

The following facts were found by the trial court in its order on the defendant's motion to suppress. In April 2008, Detective Kevin Rourke of

the Nashua Police Department worked with a confidential informant on a drug investigation. The investigation focused on Radhames Melo and the defendant; the police suspected that both men were dealing drugs. Allegedly, the defendant, at Melo's direction, repeatedly traveled from New Hampshire to New York City and then to the Dominican Republic, where he picked up approximately 500 grams of heroin. The defendant swallowed the drugs, returned to New Hampshire, and met Melo at a hotel, where he expelled them.

Following one of these trips, Detective Rourke and the confidential informant completed two drug purchases from Melo and the defendant. The second took place at the defendant's apartment, located in a multi-family house on Perham Street in Nashua. Detective Rourke gave the informant money to buy heroin and watched him enter the apartment; shortly thereafter, the informant left and delivered a package of heroin to Detective Rourke. A surveillance team monitored the informant's movements, and the police confirmed that the substance was heroin.

Detective Rourke applied for and received a search warrant for the defendant's apartment. The warrant permitted the seizure of "Identification, documents and records relating to the trafficking of Narcotic drugs as well as other contraband listed in Attachment 'A', cellular phones and the information contained Therein, contrary to Revised Statutes Annotated 318-B:2." Attachment A listed many items, including United States currency, drug use paraphernalia, firearms, documents identifying the apartment's occupants, and records relating to drug trafficking. Neither the warrant nor Attachment A specifically permitted the officers to search for, or seize, "drugs"; the word "heroin" does not appear in the warrant or attachment.

On May 1, 2008, Detective Rourke and several other police officers executed the search warrant. They discovered thirty-one individually wrapped bags of heroin inside the pocket of a vest hanging in a bedroom closet. The police confiscated the drugs and arrested the defendant shortly thereafter.

Prior to trial, the defendant moved to suppress the heroin, arguing that the police unlawfully seized it under the plain view exception because they did not inadvertently discover it. The State contended that the police properly seized the heroin, noting we have "left undecided the issue of whether *contraband* can be seized when its discovery is not inadvertent." The State conceded that the discovery of the heroin was not inadvertent.

The trial court granted the defendant's motion to suppress, reasoning that, given our plain view jurisprudence, "it is unclear, at best, whether the New Hampshire Supreme Court would be willing to abandon the inadvertency requirement when faced with a case like the one at hand." The trial

court ruled that, "as it stands, New Hampshire law requires trial courts to apply the inadvertence prong to all plain view seizures." This appeal followed.

In reviewing the trial court's rulings, we accept its factual findings unless they lack support in the record or are clearly erroneous. *State v. Steeves*, 158 N.H. 672, 675 (2009). We review the trial court's conclusions of law *de novo*. *Id.*

Warrantless seizures are *per se* unreasonable under Part I, Article 19 of the State Constitution, unless they fall within the narrow confines of a judicially crafted exception. *State v. Davis*, 149 N.H. 698, 700 (2003). The State bears the burden of proving by a preponderance of the evidence that the seizure falls within a recognized exception, such as the plain view exception. *Id.* at 700-01.

The United States Supreme Court first set forth "criteria that generally guide 'plain-view' seizures" in a plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 465-73 (1971). *Horton v. California*, 496 U.S. 128, 134 (1990). Under this exception, the State must prove that: (1) the initial intrusion which afforded the view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was "immediately apparent." *Davis*, 149 N.H. at 700-01; *see Coolidge*, 403 U.S. at 466, 469. The police must have probable cause to believe that the evidence is incriminating under the third prong of the analysis. *See Arizona v. Hicks*, 480 U.S. 321, 326 (1987); *State v. Ball*, 124 N.H. 226, 234-35 (1983) (requiring probable cause under state constitutional analysis). In *Horton*, however, the Court held that inadvertency would no longer be required under the Federal Constitution. *Horton*, 496 U.S. at 130. Therefore, the defendant's sole claim is under the State Constitution.

With respect to the second prong, which requires that the discovery be inadvertent, the *Coolidge* Court reasoned that

> where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it . . . [t]he requirement of a warrant to seize imposes no inconvenience . . . or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as *"per se* unreasonable" in the absence of "exigent circumstances."

> If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of "Warrants . . . particularly describing . . . [the] things to be seized." The initial intrusion may, of

course, be legitimated not by a warrant but by one of the exceptions to the warrant requirement . . . . But to extend the scope of such an intrusion to the seizure of objects — not contraband nor stolen nor dangerous in themselves — which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure.

*Coolidge*, 403 U.S. at 470-71.

In *Horton v. California*, the United States Supreme Court eliminated the inadvertency requirement, holding that "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition." *Horton*, 496 U.S. at 130. While "[a] search compromises the individual interest in privacy," "a seizure deprives the individual of dominion over his or her person or property." *Id.* at 133. As the seizure of a piece of evidence may "invade the owner's possessory interest," the Court reasoned that "[i]f 'plain view' justifies an exception from an otherwise applicable warrant requirement . . . it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches." *Id.* at 134.

The Court in *Horton* noted that the plurality opinion discussing the plain view doctrine in *Coolidge* "did not command a majority" and that the discussion was "not a binding precedent." *Id.* at 136 (quotation omitted). The Court noted two flaws in the reasoning of *Coolidge*:

> First, evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer. The fact that an officer is interested in an item of evidence and fully expects to find it in the course of a search should not invalidate its seizure if the search is confined in area and duration by the terms of a warrant or a valid exception to the warrant requirement. If the officer has knowledge approaching certainty that the item will be found, we see no reason why he or she would deliberately omit a particular description of the item to be seized from the application for a search warrant . . . . On the other hand, if he or she has a valid warrant to search for one item and merely a suspicion concerning the second, . . . we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.
>
> . . . .

Second, the suggestion that the inadvertence requirement is necessary to prevent the police from conducting general searches, or from converting specific warrants into general warrants, is not persuasive because that interest is already served by the requirements that no warrant issue unless it particularly describes the place to be searched and the persons or things to be seized, and that a warrantless search be circumscribed by the exigencies which justify its initiation. Scrupulous adherence to these requirements serves the interests in limiting the area and duration of the search that the inadvertence requirement inadequately protects. Once those commands have been satisfied and the officer has a lawful right of access, however, no additional Fourth Amendment interest is furthered by requiring that the discovery of evidence be inadvertent.

*Id.* at 138-40 (quotation, citations and brackets omitted).

Justices Brennan and Marshall dissented, asserting that "the majority ignores the Fourth Amendment's express command that warrants particularly describe not only the *places* to be searched, but also the *things* to be seized." *Id.* at 142. The dissent acknowledged "that the inadvertent discovery requirement furthers no privacy interests," but noted that it "protect[s] possessory interests." *Id.* at 147.

The rationale behind the inadvertent discovery requirement is simply that we will not excuse officers from the general requirement of a warrant to seize if the officers know the location of evidence, have probable cause to seize it, intend to seize it, and yet do not bother to obtain a warrant particularly describing that evidence.

*Id.* at 144-45. "[T]o the individual whose possessory interest has been invaded, it matters not *why* the police officer decided to omit a particular item from his application for a search warrant." *Id.* at 146. An officer with probable cause to seize an item who fails to mention that item in an application for a search warrant, but seizes that item nonetheless, acts unreasonably as a matter of law. *Id.* Accordingly, "[s]uppression of the evidence so seized will encourage officers to be more precise and complete in future warrant applications." *Id.* The dissent noted that

there are a number of instances in which a law enforcement officer might deliberately choose to omit certain items from a warrant application even though he has probable cause to seize them, knows they are on the premises, and intends to seize them when they are discovered in plain view.

*Id.*

The State urges us to follow *Horton* and abolish the inadvertency requirement under our state constitutional analysis. Alternatively, relying upon the plurality opinion in *Coolidge*, 403 U.S. at 469-71, the State argues that we should exempt objects that are "contraband," "stolen," or "dangerous in themselves" from the inadvertency requirement. The defendant contends that: (1) the State "misconstrues" the intent of the language in *Coolidge*; and (2) Part I, Article 19 provides greater protections of possessory interests than does the Fourth Amendment.

Our case law concerning the inadvertence requirement is "not 'settled.' " *Davis*, 149 N.H. at 701 (*quoting State v. Cote*, 126 N.H. 514, 526 (1985)). While we currently require the discovery to be inadvertent under our state constitutional analysis, *see Davis*, 149 N.H. at 700-01, we have also stated that inadvertency is not required for guns as they are "dangerous in themselves." *State v. Slade*, 116 N.H. 436, 439 (1976) (*citing Coolidge*, 403 U.S. at 471).

Some state courts have followed *Horton* and completely abolished the inadvertency requirement. *See, e.g., State v. Loh*, 914 P.2d 592, 600 (Mont. 1996); *State v. Julius*, 408 S.E.2d 1, 7 (W. Va. 1991). Hawaii and Massachusetts have declined to follow *Horton* and continue to require inadvertency. *See Com. v. Balicki*, 762 N.E.2d 290, 298 (Mass. 2002); *State v. Meyer*, 893 P.2d 159, 165 n.6 (Haw. 1995). A few courts have recognized the exception for objects that are "contraband," "stolen," or "dangerous in themselves" set out in *Coolidge*, 403 U.S. at 471. *See, e.g., State v. Eady*, 733 A.2d 112, 116 n.7 (Conn.), *cert. denied*, 528 U.S. 1030 (1999); *State v. Nieves*, 782 A.2d 203, 207 n.6 (Conn. App. Ct. 2001); *Com. v. LaPlante*, 622 N.E.2d 1357, 1361 n.9 (Mass. 1993) (inadvertency requirement does not apply to stolen goods). *But see Balicki*, 762 N.E.2d at 298 (finding that inadvertency requirement "continues to protect the possessory interests conferred on our citizens by" state constitution).

We hold today that, with respect to drugs, weapons, and other items "dangerous in themselves," there is no longer an inadvertency requirement under our State Constitution. *Coolidge*, 403 U.S. at 471; *see Eady*, 733 A.2d at 116 n.7; *Com. v. Hason*, 439 N.E.2d 251, 256 (Mass. 1982). Thus, we need not consider the State's argument that we should adopt *Horton*.

Like the Fourth Amendment, Part I, Article 19 protects both the rights to privacy and to possessory property interests. *See Horton*, 496 U.S. at 143 (Brennan, J., dissenting). Although the inadvertency requirement does not further privacy rights, it protects an individual's possessory interest in his or her property. *Id.* at 147. Accordingly, even though the observation or seizure of an article in plain view "would [not] involve any invasion of

privacy . . . [a] seizure of the article . . . would obviously invade the owner's possessory interest." *Id.* at 133-34 (citations omitted). The need to protect such possessory interests in drugs, weapons, and other items "dangerous in themselves," however, is not compelling. *See Coolidge,* 403 U.S. at 471; *Slade,* 116 N.H. at 439.

Retaining the inadvertency requirement for such items will not deter police misconduct, as the police have no incentive not to include such items for which they have probable cause. "If the officer has knowledge approaching certainty that the item will be found, we see no reason why he or she would deliberately omit a particular description of the item to be seized from the application for a search warrant," as "[s]pecification of the additional item could only permit the officer to expand the scope of the search." *Horton,* 496 U.S. at 138-39; *see also* 2 W. LAFAVE, SEARCH AND SEIZURE § 4.11(e), at 805-06 (4th ed. 2004) (noting that most plausible reason why police do not include item in warrant for which police have probable cause is "oversight or . . . an abundance of caution or . . . a misapprehension of what it takes to obtain a search warrant covering that evidence").

■ Moreover, the warrant requirement provides "two distinct constitutional protections": it eliminates searches not based upon probable cause by requiring the scrutiny of a detached and neutral magistrate; and it prevents "a general, exploratory rummaging in a person's belongings" by requiring particularity. *Coolidge,* 403 U.S. at 467. Although we abolish the inadvertency requirement for drugs, weapons, and other items dangerous in themselves, the initial intrusion under the plain view exception must still be justified by a warrant or an exception to the search warrant requirement. *Id.* "[G]iven the initial intrusion, the seizure of an object in plain view is consistent with [the particularity requirement], since it does not convert the search into a general or exploratory one." *Id.* Eliminating inadvertency will not convert otherwise lawful searches into general exploratory searches, as all searches are already limited by search warrants or exceptions to the warrant requirement. *See Horton,* 496 U.S. at 139-40.

Finally, retaining the inadvertency requirement for drugs, weapons, and other items dangerous in themselves would do little to further the principles underlying Part I, Article 19.

> Where, once an otherwise lawful search is in progress, the police inadvertently come upon a piece of evidence, it would often be a needless inconvenience, and sometimes dangerous — to the evidence or to the police themselves — to require them to ignore it until they have obtained a warrant particularly describing it.

*Coolidge,* 403 U.S. at 467-68.

The defendant argues that we should follow the Commonwealth of Massachusetts, *see Balicki*, 762 N.E.2d at 298, and retain the inadvertency requirement under our State Constitution. In *Balicki*, the police suspected that the defendants were forging invoices from their employer, a vocational high school, to purchase household items with public funds for their personal use. *Id.* at 293. The police obtained a search warrant for the defendants' home, which authorized the seizure of seventeen specific items. *Id.* at 292-95. When the police executed the search warrant, Detective Lieutenant Patenaude "directed [a] photographer to photograph and videotape each room in the home and anything he identified to the photographer as having potential evidentiary value." *Id.* at 294-95. Detective Dunn

> saw items in the house for which he remembered seeing specific invoices, but about which he had not completed his investigation. He directed officers to seize those items even though they were not listed in the warrant. There were other items that he thought were interesting or suspicious, and he directed the photographer either to photograph or videotape them. In some instances, the items were moved for the purpose of videotaping or photographing.

*Id.*

After the officers executed the search warrant, Detectives "Patenaude, Dunn, the photographer, and representatives of the district attorney's office reviewed the videotape and photographs. Items recorded on the film or videotape that were not seized were the subject of further investigation." *Id.* at 296.

Detective Dunn then applied for a second search warrant, requesting "permission to seize many items that had been videotaped or photographed during the [previous] search." *Id.* Detective Dunn sought and received permission to photograph items listed in the warrant; when the officers executed the warrant, they seized many of the items listed, and again photographed and videotaped the defendants' home. *Id.* Based upon these facts, the Massachusetts Supreme Judicial Court "decline[d] to eliminate the inadvertence requirement from" its state constitutional jurisprudence. *Id.* at 298.

In *Balicki*, the police appeared to rely upon the plain view exception to conduct a general exploratory search of the defendants' home for stolen items. We are not confronted with facts similar to those presented in *Balicki*. Today, we abolish the inadvertency requirement under our State Constitution only for drugs, weapons, and other items dangerous in

themselves. *See Coolidge*, 403 U.S. at 471. Accordingly, we need not determine at this time whether to fully embrace the holding in *Horton*.

*Reversed and remanded.*

BRODERICK, C.J., and DALIANIS and CONBOY, JJ., concurred.