NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough–northern judicial district
No. 2016-0145


THE STATE OF NEW HAMPSHIRE

v.

DANIEL JESUS CORA

Argued: January 26, 2017
Opinion Issued: June 27, 2017


Joseph A. Foster, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.


Christine C. List, assistant appellate defender, of Concord, on the brief and orally, for the defendant.


HICKS, J. The State appeals an order of the Superior Court (Abramson, J.) granting the motion filed by the defendant, Daniel Jesus Cora, to suppress all evidence obtained from the warrantless entry by the police into his vehicle. See RSA 606:10 (2001). On appeal, the State contends that the police were allowed to enter the vehicle without a warrant either under the federal automobile exception to the warrant requirement, which the State asks that we adopt under the State Constitution, or because the defendant had a diminished expectation of privacy in the interior space of his vehicle that is visible to the public. Under the federal automobile exception, police officers, with probable

cause to search "a lawfully stopped vehicle," may conduct a warrantless search "of every part of the vehicle and its contents that may conceal the object of the search."  United States v. Ross, 456 U.S. 798, 825 (1982).

The State urges us to overrule our decision in State v. Sterndale, 139 N.H. 445, 449-50 (1995), in which we declined to adopt, under Part I, Article 19 of the State Constitution, the federal automobile exception to the warrant requirement as articulated in Ross and other Supreme Court cases. Alternatively, the State asks that we conclude that Sterndale has been abrogated by our decision in State v. Goss, 150 N.H. 46, 48-49 (2003), and that we adopt a "slightly more narrow exception" to the warrant requirement based upon the defendant's diminished expectation of privacy in the "publicly visible areas of his car."

We decline to overrule Sterndale.  However, we agree with the State that Sterndale has been abrogated by Goss, at least in part, and that its abrogation requires that we re-evaluate whether to adopt an automobile exception to our warrant requirement.  We now recognize a limited automobile exception to the warrant requirement pursuant to which the police do not need to obtain a warrant to enter an automobile when the vehicle has been lawfully stopped while in transit and the police have probable cause to believe that a plainly visible item in the vehicle is contraband.

In this case, the police did not need a warrant before entering the defendant's vehicle because the vehicle was subject to a lawful traffic stop, and the police had probable cause to believe that the baggie and cigarette, which were plainly visible, were drugs.  Accordingly, we reverse and remand.

I.  Relevant Facts

The trial court found, or the record establishes, the following facts.  The defendant's vehicle was pulled over by Manchester Police Officer Day because it ran a red light and "cut . . . off" Day's cruiser.  The defendant was the driver of the vehicle and had two passengers with him.  While Day spoke with the defendant, he noticed the odor of fresh marijuana.  Day returned to his cruiser, ran a license check on the defendant, and requested that another officer assist him.  When the other officer, Officer Horn, arrived on the scene, Day asked the defendant to exit the vehicle while Horn spoke with the passenger sitting in the front seat.  Day told the defendant that he smelled marijuana in the automobile.  The defendant admitted that he sometimes smoked marijuana inside his vehicle.  When Day advised the defendant that the marijuana smelled fresh, the defendant admitted that there were a "couple roaches" in the vehicle.  Day asked the defendant to consent to a search of the automobile; the defendant declined to do so.

2

Meanwhile, Horn asked the passenger sitting in the front seat to get out of the vehicle. From outside the vehicle, Horn saw that near the doorjamb of the front passenger side of the vehicle were a "tied-off baggie" containing a brown, powdery substance and a "cigarette" containing a leafy, green substance. Horn called Day's attention to the items. Based upon his training and expertise, Day believed that the baggie contained heroin and that the cigarette contained marijuana. Day seized the baggie and cigarette from the vehicle.

The defendant was charged with one misdemeanor and one felony count of possession of a controlled drug. See RSA 318-B:2, I (2011). Before trial, he moved to suppress all evidence obtained from Day's warrantless entry into his vehicle. The defendant argued that the search of his vehicle was unconstitutional because it was not authorized by a warrant and because it did not fall within a judicially-recognized exception to the warrant requirement. The defendant contended that, contrary to the police officers' assertions, the plain view exception did not allow Day to enter his vehicle. The defendant brought his motion under both the State and Federal Constitutions.

The trial court granted the defendant's motion, over the State's objection, agreeing with him that the plain view exception did not justify Day's entry into the defendant's vehicle. The trial court observed that Day's entry would be justified under the federal automobile exception to the warrant requirement, but that, in Sterndale, this court had declined to adopt that exception under the State Constitution. The State moved to reconsider, arguing that the trial court had misapplied Sterndale in light of the expectation of privacy analysis that we adopted in Goss. The State contended that, because the defendant had no reasonable expectation of privacy in the area of the vehicle in which the evidence had been found, Day was not required to obtain a warrant before entering the vehicle and seizing the evidence. The trial court denied the State's motion, concluding that Goss did not abrogate Sterndale. This appeal followed.

II. Analysis

When reviewing a trial court's rulings on a motion to suppress, we accept its findings of fact unless they lack support in the record or are clearly erroneous. State v. Mouser, 168 N.H. 19, 22 (2015). We review its legal conclusions de novo. Id. We first address the parties' arguments under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the New Hampshire Constitution protects an individual from "all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. "A warrantless search is per se unreasonable and invalid unless it comes within one of a few recognized exceptions." State v. Graca, 142 N.H. 670, 673 (1998)

(quotation omitted).  "Absent a warrant, the burden is on the State to prove that the search was valid pursuant to one of these exceptions." Id. (quotation omitted).

One exception to the warrant requirement is the plain view exception, see State v. Nieves, 160 N.H. 245, 247 (2010), which authorizes the police to seize an item, see Horton v. California, 496 U.S. 128, 133-36 (1990).  In order for an item's warrantless seizure to be justified under the plain view exception:  (1) the item must be in plain view; (2) the officer must not have violated the constitution "in arriving at the place from which the evidence could be plainly viewed"; and (3) the officer "must also have a lawful right of access to the object itself."  Id. at 136-37; see Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971) (explaining that "plain view alone is never enough to justify the warrantless seizure of evidence"), overruled on other grounds by Horton, 496 U.S. 128; see also Nieves, 160 N.H. at 251 (stating that, although we abolish the inadvertency requirement for drugs, weapons, and other dangerous items, "the initial intrusion under the plain view exception must still be justified by a warrant or an exception to the search warrant requirement"); State v. Harriman, 467 A.2d 745, 748-49 (Me. 1983) (noting that "[t]he plain view sighting of contraband or evidence of crime does not, standing alone, give rise to a right to enter a constitutionally protected area to seize the item").  In addition, the incriminating nature of the item seized must be "immediately apparent," which means that, at the time of the seizure, the police must have probable cause to believe that the item seized constitutes incriminating evidence.  State v. Davis, 149 N.H. 698, 701 (2003).  Because the items at issue are drugs, there is no requirement that the officers' view of them be inadvertent.  Nieves, 160 N.H. at 250; see Bell, 164 N.H. at 455.

In the instant case, for the purposes of this appeal, there is no dispute that the items at issue (the baggie and cigarette) were in plain view or that the police had probable cause to believe that they constituted incriminating evidence.  See State v. Gilson, 116 N.H. 230, 233 (1976) (holding that "[a]n officer with sufficient experience to recognize the odor of burning marijuana has probable cause to suspect its presence when he detects the odor within the confines of an automobile").  Nor is there any claim that the police violated the New Hampshire Constitution when they observed the items from outside of the defendant's vehicle during a lawful traffic stop.  Rather, this case turns upon whether the officers had a lawful right of access to the items themselves.  See Horton, 496 U.S. at 137; see also Nieves, 160 N.H. at 251.  In other words, this case requires us to decide whether the police violated Part I, Article 19 when they entered the defendant's vehicle in order to seize the items.  If the police entry into the defendant's vehicle did not violate Part I, Article 19, it is not disputed that their seizure of the items was justified under the plain view exception to the warrant requirement.

4

The State argues that the officers were allowed to enter the defendant's vehicle either under the federal automobile exception to the warrant requirement, which the State urges us to adopt, or under a narrower exception because the defendant had a diminished expectation of privacy in the interior space of his vehicle that is visible to the public.  The State argues that we must either overrule Sterndale and adopt the federal automobile exception or conclude that Sterndale was abrogated by our adoption of the expectation of privacy analysis in Goss and adopt our own, more limited automobile exception.  The defendant counters that Sterndale remains good law and that our decision in Goss does not undermine it.  Alternatively, the defendant argues that the police in this case lacked authority to enter his vehicle without a warrant because doing so either interfered with his reasonable expectation of privacy or constituted a trespass.

A.  Sterndale

We first address the status of our decision in Sterndale.  Generally, we will overrule a prior decision only after considering:  (1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.  State v. Smith, 166 N.H. 40, 44 (2014).  No single factor is dispositive, and the factors are not meant to be rigidly applied or blindly followed.  State v. Balch, 167 N.H. 329, 334 (2015).  The State relies upon factors (1) and (3), asserting that factors (2) and (4) "are not relevant to this stare decisis analysis."

The first stare decisis factor "examines whether a rule has become difficult or impractical for trial courts to apply."  Id.  "The first factor weighs against overruling when a rule is easy to apply and understand."  Id.  In arguing that Sterndale is unworkable, the State focuses upon our law regarding the exigent circumstances exception to the warrant requirement.  In effect, the State contends that, because we do not have an automobile exception to the warrant requirement, police must rely upon the exigent circumstances exception in order to search automobiles, and that this exception as so applied is "confusing."  (Bolding omitted.)  We observe that the State has not argued on appeal, and did not argue in the trial court, that the exigent circumstances exception or any other exception to the warrant requirement justifies the search in this case.  In any event, the issue here is not whether the exigent circumstances exception as applied to automobiles is confusing, but whether the Sterndale rule has proven to be intolerable simply by defying practical workability.  See Smith, 166 N.H. at 44.

5

We find somewhat more persuasive the State's contentions regarding the third stare decisis factor, which focuses upon "whether the law has developed in such a manner as to undercut the prior rule." Balch, 167 N.H. at 335. The State contends that Sterndale is no longer good law because, when we adopted the expectation of privacy analysis in Goss, we "changed the framework through which [we] review[ ] challenges to searches under [P]art I, [A]rticle 19." We agree with the State that Goss changed how we analyze whether a warrantless search is constitutional under Part I, Article 19, but disagree with its contention that, therefore, we should adopt the federal automobile exception.

In analyzing how Goss affected Sterndale, we begin by examining Sterndale. The defendant in Sterndale was subject to a traffic stop, and then arrested and placed in the back of a police cruiser. Sterndale, 139 N.H. at 446-47. Following the arrest, the police officer returned to the defendant's vehicle and observed a brown paper bag. Id. at 447. The officer leaned into the automobile, opened the paper bag, and found four clear, plastic bags containing what he believed to be marijuana. Id. The trial court suppressed the contents of the brown paper bag. Id.

On appeal, the State argued that the officer's search was justified as a search incident to arrest, under the exigent circumstances exception to the warrant requirement, and under the federal automobile exception to that requirement, which the State asked us to adopt. Id. at 446, 449. We rejected the State's search incident to arrest argument and declined to consider its exigent circumstances argument because the State had not preserved it for our review. Id. at 447-48.

We also rejected the State's invitation to adopt, under Part I, Article 19 of the State Constitution, the federal automobile exception as articulated in such decisions as Ross, 456 U.S. at 825. Sterndale, 139 N.H. at 449-50. We stated that we did not find convincing the Court's two justifications for that exception: (1) that there is a "reduced expectation of privacy" in an automobile; and (2) that an automobile presents exigent circumstances because it is "readily mobile" and "could be moved beyond the reach of the police." Id. at 449 (quotations omitted). We found the privacy justification unpersuasive because, at that time, we had not expressly adopted an expectation of privacy test under the State Constitution. Id. We found the exigent circumstances rationale unpersuasive because we disagreed with the theory that "every automobile, due to its mobility, serves to justify governmental intrusion into the vehicle." Id.; see State v. Camargo, 126 N.H. 766, 770-71 (1985) (agreeing "that the exigency exception [to the warrant requirement] typically applies to searches of automobiles stopped while in transit, because of their mobility and the likelihood that the occupants will be alerted to the police suspicion and will remove or destroy the contents of the automobile," but holding that exigent circumstances were not present when police towed the defendant's automobile

6

from a parking lot behind his apartment). We observed that some vehicles, such as the towed vehicle in Camargo, are not mobile. Sterndale, 139 N.H. at 449. In those situations, we noted, the police may avoid incurring the risk that a vehicle will be moved by assigning an officer to guard it while a warrant is obtained. Id.

Less than a decade later, in 2003, we decided Goss. As the State asserts, our adoption of the expectation of privacy analysis in Goss "changed the calculus that must be applied in determining whether a warrantless search . . . was unreasonable."

Until we decided Goss, we had tacitly recognized that an expectation of privacy exists under our State Constitution, but had not yet adopted such an analysis under Part I, Article 19. Goss, 150 N.H. at 48. In Goss, we determined that the "time [had] come to adopt explicitly a reasonable expectation of privacy analysis under Part I, Article 19." Id. Under our test, a constitutional violation occurs when a warrantless search takes place in an area in which (1) the person has "exhibited a subjective expectation of privacy in the area" and (2) "that expectation [is] one that society is prepared to recognize as reasonable," State v. Smith, 163 N.H. 169, 172 (2012), and the search does not fit within one of the exceptions to the warrant requirement, see State v. Smith, 169 N.H. ___, ___, 154 A.3d 660, 664 (2017) (explaining that Part I, Article 19 of the State Constitution is violated when "government agents invade a person's reasonable expectation of privacy").

Since deciding Goss, we have consistently examined whether a defendant has a reasonable expectation of privacy in the area to be searched to determine whether a warrantless search complies with Part I, Article 19. See, e.g., Smith, 169 N.H. at ___, 154 A.3d at 667 (holding that defendant tenant lacked a reasonable expectation of privacy in the common hallway of a rooming house, and, therefore, warrantless entry of police into that hallway did not violate the state constitutional prohibition against unreasonable searches and seizures); State v. Orde, 161 N.H. 260, 267 (2010) (concluding that police warrantless entry onto the defendant's deck violated the State Constitution because the defendant had a reasonable expectation of privacy in his deck); State v. Johnson, 159 N.H. 109, 111-12 (2009) (because the defendant did not have a reasonable expectation of privacy in the sloping, overgrown area behind his house, the police did not need a warrant to search there).

Our adoption of an expectation of privacy analysis in Goss abrogates our determination in Sterndale that "the 'reduced expectation of privacy' the Supreme Court has found inherent in an automobile under the fourth amendment is not persuasive under part I, article 19 of the New Hampshire Constitution." Sterndale, 139 N.H. at 449.

7

B.  Applying Goss to Automobiles

Consistent with our decision in Goss, we now agree with the Supreme Court that there is a diminished expectation of privacy, generally, in automobiles.  As the United States Supreme Court has "repeatedly recognized, . . . the expectation of privacy in 'an automobile . . . [is] significantly different from the traditional expectation of privacy and freedom in one's residence.'"  Com. v. Simmons, 466 N.E.2d 85, 89 (Mass. 1984) (quoting United States v. Martinez-Fuerte, 428 U.S. 543, 561 (1976)).  The diminished protection "accorded automobiles derives from their continual exposure to public scrutiny."  Id.  As the Court has explained, there is a diminished expectation of privacy in an automobile because "[a] car has little capacity for escaping public scrutiny.  It travels public thoroughfares where both its occupants and its contents are in plain view."  New York v. Class, 475 U.S. 106, 113 (1986) (quotations omitted).  Moreover, "[e]very operator of a motor vehicle must expect that the State, in enforcing its regulations, will intrude to some extent upon that operator's privacy."  Id.; see Rakas v. Illinois, 439 U.S. 128, 154 n.2 (1978) (Powell, J., concurring) (observing that there are "sound reasons" for distinguishing between other locations and automobiles:  "Automobiles operate on public streets; they are serviced in public places; they stop frequently; they are usually parked in public places; their interiors are highly visible; and they are subject to extensive regulation and inspection.").  Therefore, we agree with the Supreme Court that there is a diminished expectation of privacy in an automobile.

C.  Automobile Exception Under the State Constitution

The State contends that because we adopted an expectation of privacy analysis in Goss, we should, therefore, recognize the federal automobile exception under our State Constitution.  We disagree.

We believe that the federal automobile exception is too broad.  Under the federal automobile exception, police officers, with probable cause to search "a lawfully stopped vehicle," may conduct a warrantless search "of every part of the vehicle and its contents that may conceal the object of the search."  Ross, 456 U.S. at 825.  We believe, however, that there can be "a reasonable expectation of privacy in certain areas of the interior of an automobile otherwise placed in the public view."  Simmons, 466 N.E.2d at 89.  Courts in other jurisdictions, for instance, have found that such an expectation exists "in those areas which would be otherwise free from observation except by physical intrusion of some sort," such as "the trunk, the glove compartment, closed containers in the interior, and in most cases, the area under the seats."  Id. (quotation omitted).  In State v. Elison, 14 P.3d 456, 469 (Mont. 2000), for instance, the court concluded that the defendant had an actual expectation of privacy in items stowed behind the seat in his automobile and that his actual expectation was reasonable.  The court explained that "when a person takes

8

precautions to place items behind or underneath seats, in trunks or glove boxes, or uses other methods of ensuring that those items may not be accessed and viewed without permission, there is no obvious reason to believe that any privacy interest with regard to those items has been surrendered simply because those items happen to be in an automobile." Elison, 14 P.3d at 470.

Accordingly, we reject the State's invitation to adopt the federal automobile exception under the State Constitution. We leave intact the central holding of Sterndale — that we do not recognize, under Part I, Article 19, the federal automobile exception as articulated in Ross, 456 U.S. at 825. Sterndale, 139 N.H. at 449-50.

However, we take this opportunity to recognize a more limited automobile exception to our warrant requirement. Under that more limited exception, the police need no warrant to enter an automobile when: (1) the vehicle has been stopped in transit pursuant to a lawful stop; and (2) the police have probable cause to believe that a plainly visible item in the vehicle is contraband.

We believe that this limited automobile exception is a legitimate extension of our decision in Goss. We further believe that it "correctly balances the need to search against the invasion which the search entails, and, thus heeds our constitution's proscription against unreasonable searches." State v. Smith, 141 N.H. 271, 276 (1996) (quotation, brackets, and citation omitted) (adopting, under Part I, Article 19, the federal "protective sweep" exception to the warrant requirement). Whereas the privacy expectations of an individual in his or her automobile are "considerably diminished, the governmental interests at stake are substantial." Wyoming v. Houghton, 526 U.S. 295, 304 (1999). The government has a well-recognized "need to seize readily movable contraband." Florida v. White, 526 U.S. 559, 565 (1999); see Camargo, 126 N.H. at 770 (noting, with approval, the trial court's determination that a vehicle stopped in transit creates an "inherently exigent circumstance" (quotation omitted)). "Effective law enforcement would be appreciably impaired without the ability to" enter the plainly visible interior of a lawfully stopped vehicle when the police have probable cause to believe that there is contraband in that area. Houghton, 526 U.S. at 304. Moreover, when an automobile is stopped in transit, there is a "risk that the . . . contraband will be permanently lost while a warrant is obtained." Id.

In the instant case, because the defendant's vehicle was stopped in transit pursuant to a lawful stop and because the police had probable cause to believe that plainly visible items in the vehicle were contraband, they needed no warrant before entering the vehicle. Because the Federal Constitution affords the defendant no greater protection than does the State Constitution under these circumstances, we necessarily reach the same conclusion under both constitutions. See Ross, 456 U.S. at 825.

9

In light of our decision, we need not address the defendant's assertion that the police entry into his vehicle constituted a "search" under a trespass theory. See Florida v. Jardines, 133 S. Ct. 1409, 1414-15, 1417 (2013); see also Mouser, 168 N.H. at 24 (acknowledging that we have not yet addressed whether the trespass theory, as articulated by the Supreme Court, is a viable theory under the State Constitution). Here, even assuming without deciding the viability of the trespass theory under the State Constitution, and even assuming without deciding that what occurred is a "search" under that theory, such a search would be constitutional, as previously discussed, under the limited automobile exception we adopt today.

Reversed and remanded.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.