NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2016-0363

THE STATE OF NEW HAMPSHIRE

v.

SHANNON GLAVAN

Argued: February 28, 2018
Opinion Issued: November 1, 2018

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

Christine C. List, assistant appellate defender, on the brief and orally, for the defendant.

HANTZ MARCONI, J. The State appeals an order of the Superior Court (Ruoff, J.) granting the motion filed by the defendant, Shannon Glavan, to suppress evidence seized from her automobile. We reverse and remand.

The trial court found, or the record establishes, the following facts. At approximately 1:45 a.m. on September 23, 2015, Officer O'Connor of the Manchester Police Department observed a car parked at a Mobil gas station in Manchester, which had been closed since 11:00 p.m. the night before. He approached the car and saw the defendant sleeping in the driver's seat.

O'Connor shined a light into the defendant's car and, when she did not wake up, knocked on the window. While knocking, he saw a "loaded syringe containing a clear, reddish liquid" by the defendant's left leg. Based on his training and experience, O'Connor believed the syringe contained narcotics.

When the defendant awoke, O'Connor asked her to exit the car and she agreed. O'Connor instructed the defendant not to touch the syringe and stated that he would secure it before she stepped out of the car because he wanted to prevent needle sticks to either of them. The defendant opened the door and remained in the driver's seat while O'Connor reached in, retrieved the syringe, and placed it on the roof of the car. After the defendant exited the car, O'Connor asked her what was in the syringe, and she answered that it contained "meth." O'Connor arrested the defendant and secured the syringe, which later tested positive for methamphetamine.

The defendant was charged with possession of a controlled drug, and she moved to suppress all evidence resulting from the search of her vehicle under Part I, Article 19 of the New Hampshire Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. Following a hearing, the trial court granted the defendant's motion. The trial court reasoned that, given that at that time there was no recognized automobile exception to the warrant requirement under the State Constitution, the plain view doctrine did not authorize O'Connor's warrantless search of the defendant's vehicle. Accordingly, the court concluded that "the syringe and other fruits" of O'Connor's entry into the defendant's vehicle must be suppressed. This appeal followed.

Following acceptance of the State's appeal, but prior to briefing, we stayed this appeal pending the outcome of State v. Cora, 170 N.H. 186 (2017). In Cora, we recognized a limited automobile exception to our warrant requirement under the State Constitution. Cora, 170 N.H. at 188-89. The State now argues that, given our decision in Cora, because O'Connor "had lawfully detained the defendant and had probable cause to believe that the plainly visible syringe was loaded with contraband, he did not need a warrant to reach into the defendant's car to seize the syringe," and, therefore, the trial court erred in suppressing the evidence.

The defendant acknowledges that the parties' dispute in the trial court over whether the plain view exception to the warrant requirement justifies an officer's physical intrusion into a vehicle was rendered moot by Cora. Nonetheless, the defendant asserts that the automobile exception that we recognized in Cora is limited to vehicles that are "stopped in transit," and, thus, the exception does not apply here because she "was asleep and parked when police came into contact with her vehicle." The defendant does not contend that her vehicle was stopped pursuant to an unlawful stop, and we

2

accordingly limit our analysis to the question whether the vehicle was stopped "in transit."

When reviewing a trial court's rulings on a motion to suppress, we accept its findings of fact unless they lack support in the record or are clearly erroneous. Id. at 190. We review its legal conclusions de novo. Id.

In Cora we determined that the federal automobile exception is too broad in that it permits police officers, with probable cause to search a lawfully stopped vehicle, to conduct a warrantless search of every part of the vehicle "that may conceal the object of the search." Id. at 195-96. We reasoned that "there can be a reasonable expectation of privacy in certain areas of the interior of an automobile otherwise placed in the public view." Id. at 196 (quotation omitted). Accordingly, we recognized "a more limited automobile exception to our warrant requirement," under which "the police need no warrant to enter an automobile when: (1) the vehicle has been stopped in transit pursuant to a lawful stop; and (2) the police have probable cause to believe that a plainly visible item in the vehicle is contraband." Id. We determined that this limited exception balances the diminished expectation of privacy in an automobile with the government's "well-recognized need to seize readily movable contraband." Id. (quotation omitted). As we noted, "when an automobile is stopped in transit, there is a risk that the contraband will be permanently lost while a warrant is obtained." Id. at 197 (quotation and ellipses omitted).

The State appears to argue that a "lawful detention" is all that is required under the first prong of the limited automobile exception set forth in Cora. The defendant counters that a lawful detention alone is not sufficient to satisfy the first Cora prong because, unlike the federal automobile exception, the automobile exception in Cora "limited its applicability only to those vehicles that are stopped in transit." She asserts that in State v. Camargo, 126 N.H. 766, 771 (1985), we distinguished between parked vehicles and vehicles in transit. She contends that her car, like the vehicle in Camargo, was parked and, therefore, not in transit. We need not decide whether the first Cora prong is limited to vehicles that are "stopped in transit" pursuant to a lawful stop because we conclude that, on the facts of this case, the defendant's car was stopped in transit.

In Camargo, the defendant was stopped by the police because the vehicle she was driving matched the description of a stolen vehicle. Camargo, 126 N.H. at 768. Several days later, the defendant went to the police station and, after admitting to the police that her previous statements about her ownership of the vehicle were false, the defendant was charged with receiving stolen property and the police had the vehicle towed from the parking lot of her apartment. Id. at 768-69. We agreed with the defendant that the warrantless seizure of her vehicle from the parking lot behind her apartment was unreasonable. Id. at 771-72. We reasoned that "[w]hen the automobile was

3

parked behind the defendant's apartment in a private lot, the police had sufficient probable cause to obtain a search warrant for the defendant's automobile," but "the exigency exception was not met because the automobile was parked and was therefore not mobile." Id. at 771. Thus, we concluded that the police could have obtained a warrant before seizing the vehicle, "and could have avoided incurring undue risk of the vehicle being moved by simply assigning an officer to observe the lot and automobile while they obtained the warrant." Id. at 772.

Camargo does not establish that, as a matter of law, parked cars can never be "in transit." The definition of "transit" is "an . . . instance of passing or journeying . . . through." Webster's Third New International Dictionary 2428 (unabridged ed. 2002). In Camargo, the vehicle was unoccupied and parked at the place where the defendant lived. Here, the defendant was in the driver's seat of the car, parked temporarily at 1:45 a.m. at a public gas station that had been closed since 11:00 p.m. the night before. On the facts of this case, we conclude that the defendant's automobile was stopped in transit, and thus the trial court erred by granting the defendant's motion to suppress. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

LYNN, C.J., and HICKS and BASSETT, JJ., concurred.