NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2017-0413

THE STATE OF NEW HAMPSHIRE

v.

SEAN F. STACEY

Argued: June 27, 2018
Opinion Issued: November 1, 2018

Gordon J. MacDonald, attorney general (Gordon P. Landrigan, attorney, on the brief and orally), for the State.

Sisti Law Offices, of Chichester (Wade Harwood on the brief and orally), for the defendant.

HICKS, J. The defendant, Sean F. Stacey, appeals his convictions on one felony count and one misdemeanor count of possession of a controlled drug. See RSA 318-B:2 (2017). On appeal, he argues that the Superior Court (Fauver, J.) erred by denying his motion to suppress evidence of the drugs he was convicted of possessing. We affirm.

The trial court recited, or the record supports, the following facts. On June 30, 2016, a state trooper on "speed detail" on Route 16 in Dover pulled over the vehicle that the defendant was driving for speeding. The vehicle did

not belong to the defendant, but belonged to someone who had let him borrow it. Once the vehicle was stopped, the trooper approached it, identified himself, and asked the defendant for his license and registration. The defendant was the vehicle's sole occupant. While speaking with him, the trooper detected an odor of marijuana emanating from the vehicle. When questioned about it, the defendant appeared nervous; he no longer made eye contact with the trooper and continually glanced at the console and at a backpack that was on the vehicle's passenger side. As the defendant retrieved his driver's license from his wallet, the trooper noticed that the wallet contained a "stack of cash" folded and wrapped in a blue rubber band. As recounted by the trial court, according to the trooper, the cash was "not inside the designated area [of the wallet] where most people keep their cash."

Believing there to be probable cause that the vehicle contained marijuana, the trooper asked the defendant if he would consent to a search of it. When the defendant declined, the trooper informed him that the trooper could seize the vehicle and obtain a search warrant. The defendant again declined to consent to a search and said that he would like the trooper to apply for a search warrant.

As the defendant was arranging for a ride, another trooper arrived on the scene and was asked to provide the defendant with a "courtesy transport" to the next highway exit. Before entering the second trooper's cruiser, the defendant was subjected to a pat down search during which the trooper felt "a wad of something," which the defendant said was cash to purchase a vehicle. Once the second trooper transported the defendant, the vehicle was seized and secured at the troop barracks pending the issuance of a search warrant.

The first trooper resumed speed detail until his shift ended at 9:00 p.m. He was not scheduled to work again until Sunday, July 3. That day, he signed an affidavit before a circuit court judge in support of a warrant to search the vehicle. However, the trooper did not present the search warrant application to a judge for issuance of the warrant until Tuesday, July 5. At the motion to suppress hearing, the trooper testified that he did not believe that the situation was sufficiently urgent to merit calling an on-call judge on a Sunday or holiday and that he did not ask another trooper to prepare the application because it was his case and he wanted to see it through to the end. As a result, the search warrant in this case was not issued until July 5, approximately five days after the vehicle was seized.

Before trial, the defendant moved to suppress all evidence obtained as a result of the seizure and subsequent search of the vehicle. See State v. Boyer, 168 N.H. 553, 557 (2016) (explaining that, under the State Constitution, a defendant may have standing to object to a search or seizure based upon: "(1) being charged with a crime in which possession of an item or thing is an element, which confers automatic standing; or (2) having a legitimate

expectation of privacy in the place searched or the item seized"); see also United States v. Sugar, 322 F. Supp. 2d 85, 94 (D. Mass. 2004) ("Generally speaking, persons who borrow cars have standing to challenge searches of the borrowed vehicles." (citing cases)). Among his theories was the assertion that the seizure of the vehicle, although lawful at its inception, became unlawful because of the five-day delay in securing a search warrant. The trial court denied the defendant's motion, and this appeal followed.

On appeal, the defendant argues that the delay between the seizure of the vehicle and obtaining a search warrant rendered the seizure unconstitutional under both the State and Federal Constitutions. See N.H. CONST. pt. I, art. 19; U.S. CONST. amends. IV, XIV. When we review a trial court's ruling on a motion to suppress, we accept its factual findings unless they lack support in the record or are clearly erroneous. State v. McInnis, 169 N.H. 565, 569 (2017). Our review of the trial court's legal conclusions is de novo. Id. We first address the issues under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Part I, Article 19 of the State Constitution provides that "[e]very subject hath a right to be secure from all unreasonable searches and seizures of his person, his houses, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. "Evidence that is obtained in violation of Part I, Article 19 may be subject to exclusion from evidence in a criminal trial." State v. Davis, 161 N.H. 292, 295 (2010).

"Warrantless seizures are per se unreasonable under Part I, Article 19 of the State Constitution, unless they fall within the narrow confines of a judicially crafted exception." State v. Nieves, 160 N.H. 245, 247 (2010). In the instant case, there is no dispute that the initial seizure of the vehicle was lawful. As defense counsel acknowledged during oral argument, the vehicle was seized based upon probable cause and exigent circumstances. See State v. Stern, 150 N.H. 705, 708 (2004) (describing the exigent circumstances exception to the warrant requirement); see also State v. Gilson, 116 N.H. 230, 233 (1976) (holding that "[a]n officer with sufficient experience to recognize the odor of burning marijuana has probable cause to suspect its presence when he detects the odor within the confines of an automobile"); cf. State v. Cora, 170 N.H. 186, 196 (2017) (holding that the police do not need a warrant to enter a vehicle that has been stopped in transit pursuant to a lawful stop when they have probable cause to believe that a plainly visible item in the vehicle is contraband).

Nonetheless, "a seizure reasonable at its inception because based upon probable cause may become unreasonable as a result of its duration." Segura v. United States, 468 U.S. 796, 812 (1984). Thus, "[a] temporary warrantless seizure supported by probable cause is reasonable as long as 'the police

diligently obtain[ ] a warrant in a reasonable period of time.'" United States v. Laist, 702 F.3d 608, 613 (11th Cir. 2012) (quoting Illinois v. McArthur, 531 U.S. 326, 334 (2001)); see United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998) (explaining that "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant").

To determine whether a seizure became unreasonable because of the delay in obtaining a warrant, "[w]e must balance the nature and quality of the intrusion on the individual's [constitutionally-protected] interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983).

"On the individual person's side of this balance, the critical question relates to any possessory interest in the seized object, not to privacy or liberty interests." United States v. Burgard, 675 F.3d 1029, 1033 (7th Cir. 2012). "The longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one." Id. "But unnecessary delays also undermine the criminal justice process in a more general way: they prevent the judiciary from promptly evaluating and correcting improper seizures." Id. "Thus the 'brevity' of the seizure is 'an important factor' for us to weigh." Id. (quoting Place, 462 U.S. at 709). "In addition, it can be revealing to see whether the person from whom the item was taken ever asserted a possessory claim to it—perhaps by checking on the status of the seizure or looking for assurances that the item would be returned." Id. "If so, this would be some evidence (helpful, though not essential) that the seizure in fact affected [the person's] possessory interests." Id.

"Turning to the state's side, a key factor in our analysis is the strength of the state's basis for the seizure." Id. "The state has a stronger interest in seizures made on the basis of probable cause than in those resting only on reasonable suspicion." Id. "All else being equal, the [constitution] will tolerate greater delays after probable-cause seizures." Id. (citing cases).

"Finally, when we balance these competing interests we must 'take into account whether the police diligently pursue[d] their investigation.'" Id. (quoting Place, 462 U.S. at 709). "When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary." Id. "When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." Id. (citing cases).

When we apply these factors, we cannot say that the five-day delay in this case "was so long that the seizure was unreasonable." Id. at 1034.

4

Looking at the defendant's "side of the ledger, it's hard to see a significant invasion" of his constitutional interest in being protected from unreasonable seizures "flowing from the government's delay." United States v. Christie, 717 F.3d 1156, 1162 (10th Cir. 2013). He did not own the seized vehicle, and, according to the trooper's affidavit, had been allowed to borrow it for only a limited purpose — either, as the defendant told the trooper, so that he could travel to his recently-deceased grandfather's home in Massachusetts to help clean out the residence or, as the vehicle's owner told the trooper, so that he could shop for another vehicle. Moreover, there is no evidence that the defendant ever asserted a possessory claim in the vehicle, either by inquiring on the status of the seizure or by seeking assurance of the vehicle's return. See Burgard, 675 F.3d at 1033; cf. United States v. Johns, 469 U.S. 478, 480-81, 486-87 (1985) (rejecting the argument of the defendants, who "never sought return of the property," that the warrantless search of their packages three days after the packages were seized from a lawfully-stopped vehicle and placed in a Federal Drug Enforcement Agency warehouse was unreasonable). Nor is there evidence that the vehicle's actual owner objected to its seizure. See Christie, 717 F.3d at 1163 (where computer's co-owner consented to its seizure and the defendant never objected to it, "the government was entitled to assume under long-standing Supreme Court teachings that any Fourth Amendment interest in the computer's continued possession had been voluntarily relinquished"). "On the other side of the equation, law enforcement's interests were . . . strong," Burgard, 675 F.3d at 1034, as the seizure was based upon probable cause, see Gilson, 116 N.H. at 233.

"Given these facts, [the defendant] leans heavily on the diligence factor, arguing that the officer was not diligent because he should have been able to submit the warrant application more quickly." Burgard, 675 F.3d at 1034. Here, the seizure coincided with the weekend and the July 4th holiday. The trooper signed the affidavit that accompanied the warrant application on Sunday, July 3, and presented the completed application on Tuesday, July 5, the first available business day after the holiday. See Martin, 157 F.3d at 54 (concluding that an 11-day delay between seizure and obtaining a warrant was not unreasonable where the delay "included two weekends and the Christmas holiday, which could explain the difficulty in promptly obtaining the warrant").

The defendant argues that the trooper "could have applied for a warrant the evening he seized the car," or sought another trooper's assistance in applying for the warrant during the two days that he was not on duty. Even so, "police imperfection is not enough to warrant reversal." Burgard, 675 F.3d at 1034. "With the benefit of hindsight, courts 'can almost always imagine some alternative means by which the objectives of the police might have been accomplished,' but that does not necessarily mean that the police conduct was unreasonable." Id. (quoting United States v. Sharpe, 470 U.S. 675, 686-87 (1985)).

The defendant likens this case to United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009). However, Mitchell is distinguishable. In Mitchell, the object seized without a warrant was the hard drive of the defendant's home computer. Mitchell, 565 F.3d at 1349. The court ruled that "the detention of the hard drive for over three weeks before a warrant was sought constitute[d] a significant interference with [the defendant's] possessory interest" because "[c]omputers are relied upon heavily for personal and business use" and "[i]ndividuals may store . . . countless . . . items of a personal nature in electronic form on their computer hard drives." Id. at 1351. Indeed, the court stated that the hard drive of a person's computer is "the digital equivalent" of that person's "home, capable of holding a universe of private information." Id. at 1352 (quotation omitted).

By contrast, in the instant case, the seized item was a vehicle — an item in which "there is a diminished expectation of privacy." Cora, 170 N.H. at 195. In fact, the vehicle did not even belong to the defendant, but to someone else. Accordingly, here, there was no "significant interference" with the defendant's possessory interest. Mitchell, 565 F.3d at 1351.

The delay in Mitchell was much longer than the 5-day delay here. See Mitchell, 565 F.3d at 1349. Further, in Mitchell, the delay occurred because the federal agent who seized the hard drive was scheduled to depart for a two-week training program that began approximately two and one-half days after the seizure occurred and because the agent did not see a need for the search warrant to be obtained during his absence. Id. at 1351. In the instant matter, the delay occurred at least in part because of a long holiday weekend. Cf. Martin, 157 F.3d at 54.

We are similarly not persuaded by the defendant's attempts to liken this case to those involving the temporary warrantless seizure of a defendant's home. See, e.g., United States v. Song Ja Cha, 597 F.3d 995, 1001-03 (9th Cir. 2010) (concluding that the 26 and one-half-hour warrantless seizure of the defendant's residence was unreasonable where the defendant was "rendered homeless for the duration of the seizure"). It is "logical" that courts have not allowed a residence to be seized for as long a period of time as is involved here "given the heightened constitutional protection preserving the privacy and sanctity of the home." Id. at 1002 (quotation omitted).

Relying upon Place, the defendant asks us to find that the seizure in this case "seriously impair[ed]" his constitutionally-protected liberty interest in traveling. See Place, 462 U.S. at 708-09. The defendant's reliance upon Place is inapt because Place involved the constitutional impacts of a prolonged seizure of luggage during a "Terry-type investigative stop," not, as in this case, the seizure of a borrowed vehicle based upon probable cause. Id.

After a warrantless seizure, the police must prioritize securing a warrant. See Burgard, 675 F.3d at 1035. Doing so "entail[s] diligent work to present a warrant application to the judicial officer at the earliest reasonable time." Id. We conclude that "this standard was met here and that the [five]-day delay was not so unreasonable" as to violate the State Constitution. Id. Because the Federal Constitution offers the defendant no greater protection than does the State Constitution as we have here interpreted it, we necessarily reach the same conclusion under both constitutions. See McArthur, 531 U.S. at 334 (stating that the Court could find "no case in which [it] [had] held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time").

Affirmed.

LYNN, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.